## THE ILLUSTRATED POSTAL CARD AND NOVELTY COMPANY *vs.* CLARENCE D. HOLT.

Third Judicial District, Bridgeport, October Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The law of the place of contract determines its validity and construction and settles the rights of the parties under it, unless the contract is to be performed or to have its beneficial operation and effect elsewhere, or is made with reference to the law of another place; but the form of remedy, in an action for its breach, and

Illustrated Postal Card & Novelty Co. *v.* Holt.

the judicial proceedings thereunder, are prescribed and regulated by the law of the place where the action is brought.

The remedies provided in the Sales Act (Public Acts of 1907, Chap. 212), for the recovery of damages for the nonacceptance of goods, and of the price agreed to be paid for them, when the title has passed, do not differ substantially from those in force at the time of its enactment; but § 63 (3) of that Act, in permitting a recovery of the price when the title has not passed, gives a remedy not before known to our law. In such a case the seller's remedy, prior to the passage of the Act, was for the recovery of his actual damages, which were usually measured by the difference between the price agreed upon and the value of the goods.

The elements of an action under § 63 (3) of the Act are a breach of the contract, nonpassage of the title at the time of the breach, an inability to sell the goods at a reasonable price, an offer of the vendor to deliver them to the buyer and the latter's refusal to receive them, and a notification by the vendor that he will thereafter hold the goods as a bailee for the buyer.

The defendant gave the plaintiff in this State an oral order, subject to change, for a large quantity of post-cards to be manufactured in New York and shipped to him here, and afterward gave a definite written order f r the same cards in that State. Before the cards were shipped the defendant sought repeatedly to cancel a portion of the order, but the plaintiff declined to accept the attempted cancellation and shipped all the goods as originally ordered. The defendant refused to accept them, and the plaintiff notified him that they were in the carrier's hands subject to his order, where they thereafter remained. The plaintiff manufactured these goods only on special order, and there was no available market for them at wholesale after the attempted cancellation. In an action for the failure to accept the goods it was *held:* —

1. That the form of remedy was governed by our law.

2. That all the elements necessary to sustain an action under § 63 (3) of the Sales Act were present.

3. That the plaintiff was justified in shipping the goods after the attempted cancellation, without separating those it knew the defendant had refused to receive from those he was willing to receive, and was under no obligation to attempt to sell the goods when it knew there was no market for them.

Argued October 26th, 1911—decided January 5th, 1912.

ACTION to recover the contract price of certain Christmas post-cards alleged to have been sold by the plaintiff to the defendant, brought to and tried by the Court of Common Pleas in New Haven County, *Wolfe, J.;* facts

found and judgment rendered for the plaintiff for $331, and appeal by the defendant. *No error.*

*Ward Church* and *Harrison Hewitt*, for the appellant (defendant).

*James D. Hart*, for the appellee (plaintiff).

WHEELER, J. The plaintiff is a manufacturer of post-cards in New York City. The defendant is a wholesale dealer in post-cards in New Haven. A salesman of plaintiff procured from defendant in New Haven a verbal order for Christmas post-cards, subject to change. Subsequently, the defendant called at plaintiff's place of business in New York, and, after examining plaintiff's catalogue, gave it a written order for one hundred thousand Christmas post-cards No. 438, for the price of $275, and for other Christmas cards, the price for the whole order amounting to $321, the same to be shipped (by what method did not appear) on August 1st, and paid for December 1st, 1910. The plaintiff in its business manufactured post-cards of this character on special order and did not keep them in stock.

On July 16th, 1910, defendant wrote plaintiff that he was obliged to cancel the order for the one hundred thousand post-cards. After securing this order, the plaintiff began the manufacture of the cards, and all of the cards so ordered were finished and packed for shipment at the date of receipt of this letter. The plaintiff replied that it could not accept the attempted cancellation as the cards would be left on its hands. Wholesale dealers in Christmas post-cards place their orders by April 1st, the retail trade continues usually until the fall, and after July 1st there is no available market for these cards with jobbers and wholesale dealers.

The defendant twice again requested plaintiff to cancel the order for card No. 438, which plaintiff declined to do, replying to defendant's last letter of July 29th, on July 30th, and on August 4th shipped defendant's entire order by common carrier, not separating cards No. 438 from the rest of the order. Upon arrival of the goods in New Haven, defendant refused to receive them, and notified plaintiff he would receive balance of order exclusive of No. 438. Thereupon plaintiff notified him the goods were in the hands of the New England Navigation Company subject to his order, where they have since remained.

The law of the place of the contract determines the validity and construction of the contract; in short, the substantial rights under it, unless the contract is to be performed or to have its beneficial operation and effect elsewhere, or it is made with reference to the law of another place. *Chillingworth* v. *Eastern Tinware Co.*, 66 Conn. 306, 317, 33 Atl. 1009; *Beggs & Co.* v. *Bartels*, 73 Conn. 132, 133, 46 Atl. 874.

The form of remedy to be pursued and the judicial proceedings thereunder are prescribed and regulated by the law of the place of the action, while the merits and rights involved in the action are controlled by the law of the place of the contract, unless the place of performance is elsewhere, or it is made with reference to another law. *Wood* v. *Watkinson*, 17 Conn. 500, 510; *Atwater* v. *Townsend*, 4 Conn. 47, 48; *Scudder* v. *Union National Bank*, 91 U. S. 406, 412.

Though it were held upon these facts that the place of this contract and of its performance was New York, the form of the remedy would be governed by our law.

This action was begun to recover for the price of goods sold and delivered. Prior to the passage of the Sales Act (Public Acts of 1907, p. 764, Chap. 212), our law permitted an action for damages by the seller

against the buyer for breach of his contract to buy goods to be manufactured for him, and it sought in such action to put the injured party in the place the contract would have placed him in had it been performed. The actual damage suffered was the recovery upheld. That was, as a rule, measured by the difference between the price of the contract of sale and the value of the goods made. When there was no market, or they were worthless, the actual damages might even be the entire value of the goods. *Allen* v. *Jarvis*, 20 Conn. 38, 48; *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 480, 35 Atl. 521.

So far as we are aware, no case has ever reached this court where, upon breach of contract for the sale of goods, an action for the price of the goods was begun.

The English law denied such a remedy, and many of our State courts have followed the English law, while a number, under the lead of the New York court, have given the seller, upon breach of a contract of sale, a remedy permitting him to store or retain the goods for the buyer, and sue the buyer for the entire purchase price.

The theory of this law is that when the seller deposits the goods with a third person for the buyer, or segregates the goods and notifies the buyer that he holds them for him, the title passes, or the rights of the parties will subsequently be adjusted as if it had passed at that time. Williston on Sales, p. 945, § 563. Our law was in this condition when the Sales Act was passed.

The remedies provided by the Sales Act for the recovery of damages for nonacceptance of goods (§ 64), and for the recovery of the price (§ 63(1, 2)) when the property in the goods has passed, do not substantially differ from the remedies provided by our law at the time of its enactment.

The remedy (§ 63(3)) is an addition to the remedies

up to that time known to our law, "although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of § 64(4) are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer; and thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

Professor Williston, who wrote the Sales Act, says in a note (42 Amer. Law Rev. 900): "The rights of the seller are also enlarged as compared with his rights under the English Act both by the greater freedom in rescission allowed an unpaid seller with a lien (Section 61), and by the allowance of an action for the full price, even though the property in the goods has not passed, if they cannot readily be resold for a reasonable price (Section 63(3))."

The elements of an action under this section are: (1) A breach of the contract to sell goods; (2) that the property in the goods at the time of the breach has not passed; (3) that they cannot be sold for a reasonable price; (4) that the seller has offered to deliver them to the buyer; (5) that the buyer has refused to receive them; (6) that the seller has notified the buyer that he thereafter holds the goods as bailee for the buyer.

The notification of cancellation by this defendant and his persistence in this course constituted a breach of the contract of sale. At this time the goods had not been segregated, nor marked for the buyer, nor delivered to a carrier for the buyer, and, in the absence of provision in the contract to the contrary, the property had not passed to the buyer. 35 Cyc. 296; *Kost* v. *Reilly*, 62 Conn. 57, 60, 24 Atl. 519.

The finding that there was no available market for the goods after the breach, and that jobbers and whole-

salers place no orders after April for such goods, and that these goods are not goods kept in stock, but are manufactured on special order, fully shows that the goods could not be sold for a reasonable price. There was no obligation upon the manufacturer to sell these cards at retail or to the retail trade—that would have involved the undertaking on its part of a new business.

The further finding, that the defendant refused to receive the goods, and that the seller declined to permit him to cancel the order, but shipped the goods by carrier to him, and notified him that they were in the carrier's hands subject to the defendant's order, is full compliance with the statutory requirements and ample notice to the buyer that the seller holds the goods as bailee for the buyer. Upon the plaintiff's delivery to the carrier and notice to the defendant that the carrier held the goods subject to his order, the property in these goods passed to the defendant. The carrier stands in place of the seller as bailee for the buyer to whom the goods now belong.

The fact that the plaintiff shipped the goods to the defendant after notice of cancellation, instead of retaining them, did not change the nature of the bailment. The carrier's possession was the plaintiff's possession—holding the goods for the defendant by the direction of the plaintiff.

The court properly overruled the defendant's claims of law, that title to the goods never passed to the defendant, and that because of notice of cancellation of the contract of sale the plaintiff was not justified in shipping the goods nor in shipping the whole order together and in not attempting to dispose of the cards.

The plaintiff was under no obligation to separate the order, nor to attempt to sell goods for which it knew it could not obtain a reasonable price.

It is quite probable that the retention of the goods

in the hands of the seller may avoid questions in relation to the carrier's storage charges and as to the manner in which the goods have been kept; but the storage of the goods with an agent of the seller, or their delivery to a shipper for the buyer, does not add to the responsibility of the seller; he continues to be the bailee for the buyer of the goods for which no reasonable price can be obtained.

There is no error.

In this opinion the other judges concurred.