THE HOME PATTERN COMPANY *vs.* THE W. W. MERTZ COMPANY.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The construction of a contract and the rights of the parties thereunder are to be determined by the law of the State in which it is made and is to be performed; but the remedy for a breach is to be pursued according to the laws of the State in which the action is brought.

The repudiation of an executory contract by one party, without the acquiescence of the other, does not put an end to it. The latter may treat it as still subsisting and perform or tender performance on his own part, assuming that, notwithstanding the former's renunciation of the contract, he will discharge its obligations when the time for their performance arrives. On the other hand, the repudiation may be accepted as a breach of the contract, in which event an action for damages is at once maintainable.

The delivery of the goods to the common carrier designated by the vendee is a delivery to the vendee himself, and vests in him the title to the goods.

The refusal of the vendee to receive the goods from the carrier at their destination does not revest the title in the vendor.

If the goods are returned and are received by the vendor, he cannot afterward recover their contract price unless he gave the vendee notice that he should hold the goods as the vendee's bailee. If, however, the goods remain in the hands of the carrier designated by the vendee, the latter has sufficient notice of the fact that the carrier holds them as his bailee, and under the Sales Act (Public

Home Pattern Co. *v.* Mertz Co.

Acts of 1907, Chap. 212, § 63) the vendor may then recover their contract price.

In an action to recover damages for the buyer's nonacceptance of the goods, the measure of the vendor's recovery, as prescribed by the Sales Act, § 64, is the estimated loss directly and naturally resulting in the ordinary course of events from such breach. Accordingly, if goods are to be manufactured from time to time by the vendor, he cannot recover for the cost of those manufactured after he has notice of the buyer's repudiation of the contract, and thus enhance the damages accruing from the latter's breach; but the profit which the vendor would have made had the contract been fully performed is to be considered in estimating his damages.

In the present case the defendant agreed to buy dress patterns to be manufactured by the plaintiff from time to time, and to place them on sale in its store, receiving credit at stated intervals for all discarded and undamaged patterns which were returned. After the first instalment of patterns had been manufactured but before its shipment, the defendant repudiated the contract and refused to accept the goods. The plaintiff declined to treat the repudiation as a breach of the contract and at the appointed time delivered the goods to the carrier designated by the defendant. *Held* that the title to these patterns had vested in the defendant who was liable for their full contract price.

With respect to its claim for damages arising from the defendant's breach, the plaintiff offered evidence of the amount of its probable profits, based on several years' experience under similar contracts with several thousand of its vendees. *Held* that while it was impossible, of course, for the plaintiff to prove the precise number of patterns which the defendant would have sold during the five years covered by the contract, a judgment based on the assumption that it would not have sold any but would have returned all of them, was erroneous and unjust to the plaintiff, since it could not fairly be supposed that such a situation would develop "in the ordinary course of events."

In cases of this character, where damages are sought for an anticipatory breach, the trier must estimate as best it can what the future situation is likely to be.

A right of action for the buyer's breach of contract accrues at the date of the breach.

Argued January 7th—decided March 11th, 1913.

ACTION for goods sold and delivered, and also to recover damages for breach of contract, brought to and tried by the Superior Court in Litchfield County, *Greene, J.;* facts found and judgment rendered for the

plaintiff for $21 only, from which it appealed. *Error and new trial ordered.*

The plaintiff, located in the city of New York, and the defendant, a Connecticut corporation located in Torrington in this State, entered into a contract in the State of New York, the essential parts of which were as follows: "In accordance with the conditions of this agreement as stated below, ship to us via N. Y., N. H. & H. R. R. freight, F. O. B. New York, a $300.00 net stock of The Ladies' Home Journal Patterns, including March 1910 issue, $150.00 payable within fifteen days after shipment and the balance of the purchase price, $150.00, is to remain as a standing credit during the term of this agreement, upon which interest is to be paid by us, semi-annually—January 10th and July 10th—at the rate of four per cent per annum. Also ship us monthly, beginning with April 1910 issue of the new patterns as issued, an average of $20.00 net; also ship us monthly style books and other publications etc., in quantities and at prices specified below, beginning with the March 1910 issue. . . . Monthly shipments to be forwarded via, As Above, freight or express F. O. B. New York, or by whatever other way you may deem most advantageous at the time of making shipment.

"The stock of patterns is to be kept for sale on the main floor of our store and is not to be transferred or assigned without your written consent. We agree to give proper attention to the agency and keep up our assortment of sizes of patterns by reordering patterns sold, at least once each week. All transportation expenses on goods ordered or returned under this agreement to be paid by us. All goods purchased, after the first stock, to be paid for on or before the tenth of the month succeeding date of shipment. All goods to be billed at net prices. DISCARDED PATTERNS, pur-

chased from you under this agreement, if in good order can be returned by us semi-annually, during January and July, at cost prices, in exchange for new patterns at cost prices, to be shipped after the receipt of the discarded patterns at your New York Office, with the understanding that both monthly shipments of new patterns and reorders of patterns are to be charged to the exchange account until our discard credit is exhausted. An inventory of the patterns on hand after discarding will be sent you at the time of the return of the discarded patterns.

"This agreement to remain in force from date, and for five years from date of first shipment under it, and thereafter until the expiration of three months' notice in writing of desire to terminate it, given by either party after the expiration of said five years. Upon expiration of such notice all patterns, not damaged or defaced, purchased of you under this agreement, can be returned by us, to your New York Office for credit at seventy-five per cent of cost price, and you are to pay us in cash, within thirty days after receipt of the patterns, any balance that may be due us, after deducting the standing credit and any balance due you on account. Failure to return the patterns within fifteen days after the expiration of the three months' notice will forfeit the right to return them. Should we go out of business at any time, if proof of discontinuance satisfactory to you is given, this agreement can be terminated as above provided by three months' notice.

"There are no verbal understandings conflicting with this agreement.

Signed in duplicate after being read.

Date, March 28th, 1908. Purchaser's Name, The W. W. Mertz Co., By W. W. Mertz, Pres't.

Above agreement is accepted, subject to approval of The Home Office, and receipt of          dollars is

hereby acknowledged on account, to be applied on first bill of goods.

The Home Pattern Company,

By Geo. H. Boyd.

Accepted and acknowledged May 21, 1908."

Under and in pursuance of this contract the plaintiff, in the month of December, 1909, and prior to January 10th, 1910, manufactured for the defendant the goods which were to be shipped under the contract as the first shipment, and to include the issue for March, 1910. On January 10th, 1910, the defendant wrote a letter to the plaintiff stating that it cancelled the contract, and should refuse to receive the goods ordered if shipped by the plaintiff. The defendant's repudiation of the contract was without justification or excuse, legal or moral. On February 19th, 1910, the plaintiff shipped to the defendant, via the New York, New Haven and Hartford Railroad, freight F. O. B., the above mentioned goods, the contract price of which was $316.36. At the same time the bill of lading was forwarded to the defendant. When the goods reached Torrington, the defendant refused to receive them. These goods had not been segregated, or marked for the defendant, or delivered to the carrier for it, on January 10th, when the defendant repudiated the contract and cancelled the order. After the shipment of February 19th, the plaintiff continued to ship to the defendant in pursuance of the contract the patterns therein called for, endeavoring in the meantime by letters and by an interview between one of its agents and the defendant to persuade the latter to perform its part of the contract. On September 1st, 1910, in a letter to the defendant replying to one of the defendant of August 18th, 1910, the plaintiff notified it that unless it heard from the defendant to the contrary it would assume that the letter of August 18th was intended to convey to the

plaintiff the defendant's determination not to perform its contract at any time, and that it desired the plaintiff to pursue its remedy at law. Shortly after this the plaintiff ceased to send goods to the defendant. None of the goods shipped after February 19th were manufactured at the time of the defendant's repudiation of the contract on January 10th. The contract price of these goods was $253.78. None of the goods which the contract required to be shipped after September, 1910, were manufactured prior to January 10th.

There was no evidence tending to show whether there was an available market for the goods which were manufactured before the defendant repudiated, or whether they could be readily resold for a reasonable price or at any price, nor as to the market or current price of such goods when they ought to have been accepted or at the time of the refusal to accept them. No evidence was offered to show that the plaintiff thereafter held the goods which it manufactured subject to the defendant's order, or that the goods which had been shipped were in the hands of the carrier subject to the defendant's order.

The contract price of the patterns was $1 for fifteen patterns; their cost to the plaintiff was thirty cents for fifteen patterns; the profit was seventy cents on each fifteen patterns, excluding consideration of discards pending the contract and returns at its end. There was no evidence as to how many patterns the defendant would have sold during the life of the contract, or, except the contract, how many it would have been bound to pay for during the life of the contract.

The plaintiff's assignments of error relate to the rulings of the court and its refusal to correct the finding, all of which sufficiently appear in the opinion.

*Thomas J. Wall* and *Caleb A. Morse*, for the appellant (plaintiff).

*William W. Bierce*, with whom was *Willard A. Roraback*, for the appellee (defendant).

THAYER, J. The contract into which the plaintiff and defendant entered for the sale of certain patterns was an executory one. The finding is that it was within the contemplation of the parties that the goods to fill the orders were to be manufactured by the plaintiff. Under the contract there was to be an original delivery of goods worth $300, net stock, two years after the making of the contract; and thereafter there were to be monthly shipments of goods of an average net cost price of $20, upon standing orders, during the five years and three months of the contract. After the plaintiff had manufactured the patterns to fill the original order, including the standing order for March, 1910, the defendant repudiated the contract. The plaintiff, as appears by its letters, which are a part of the finding, refused to acquiesce in this repudiation, and, pursuant to the contract, shipped these goods to the defendant. The plaintiff claimed that it was entitled to recover the contract price of these goods. The court held that the renunciation constituted a breach of the contract, that the title to the goods had never passed from the plaintiff to the defendant, and that, if it had passed, there could be a recovery for no more than nominal damages, because there was no evidence that the plaintiff notified the defendant that the plaintiff or the carrier held the goods as bailee for the defendant.

The contract was a New York contract, made in that State and to be performed in that State. Its construction and the rights of the parties are, therefore, to be

determined by the law of that State; but the remedy is to be pursued in accordance with the laws of this State. *Illustrated Postal Card & Novelty Co.* v. *Holt,* 85 Conn. 140, 143, 81 Atl. 1061.

The repudiation of the contract without the acquiescence of the plaintiff did not put an end to the contract. The plaintiff could still treat it as subsisting and, notwithstanding the notice of repudiation, assume that the defendant would perform its part of the contract when the time for such performance should arrive. Had it chosen to consent to the renunciation, it might have done so and brought an action at once for breach of the contract, but there can be no anticipatory breach of a contract by one party without the acquiescence of the other. A breach by one party alone can only occur after the time for performance has arrived. *Frost* v. *Knight,* L. R. 7 Exch. 111, 112; *Johnstone* v. *Milling,* L. R. 16 Q. B. D. 460, 467; *Wells* v. *Hartford Manilla Co.,* 76 Conn. 27, 35, 36, 55 Atl. 599; *Kadish* v. *Young,* 108 Ill. 170, 183; *Bernstein* v. *Meech,* 130 N. Y. 354, 358, 29 N. E. 255. The repudiation of the contract was not, therefore, a breach of it, and the plaintiff, having declined to acquiesce, was bound to tender performance when the time for delivery of the goods arrived. This it did, and the goods were received in New York by the carrier designated by the defendant. The defendant, by the express terms of the contract, was to pay the freight on the goods from the place of shipment. When the goods were thus received by the carrier, and the bill of lading had been forwarded to the defendant, the plaintiff had fully performed its contract with respect to those goods. The delivery to the railroad was delivery to the defendant, and the title thereby passed to the defendant. *Vogt* v. *Schienebeck,* 122 Wis. 491, 496, 100 N. W. 820. The defendant refused to receive the goods from the carrier when they

reached Torrington. This did not revest the title in the plaintiff. There is no finding that the defendant returned the goods to the plaintiff, or that they are not now in the possession of the carrier. If they were returned, and the plaintiff received them back, it could not now recover the contract price without notice to the defendant that it holds them as the defendant's bailee. If they are now in the hands of the bailee whom the defendant designated in the contract, it had all the notice which the statute requires when it received the bill of lading. We think that, upon the facts appearing upon the record, the title to these goods had passed to the defendant, and that the court, in its judgment, should have allowed the plaintiff to recover the contract price of the same. Sales Act (Public Acts of 1907, Chap. 212), § 63.

The plaintiff claimed that it was entitled to recover the contract price of the goods manufactured and delivered after the 19th of February, the date of the first shipment. The contention is based upon its claim that the finding should be so corrected as to show that the contract was not broken until August 18th, 1910. We cannot, from the two letters which are referred to as supporting this claim, say that the breach of the contract did not occur until the time claimed. It would appear from the finding that the plaintiff was endeavoring to persuade the defendant to go on with the contract until the date mentioned, and that the defendant all the time refused to do so, and refused to accept the goods, of which the plaintiff had notice. There are other facts than the two letters, manifestly, which must be taken into account in determining whether the court's refusal to find this fact as claimed by the plaintiff was erroneous. The finding cannot, therefore, be corrected as claimed. This removes the foundation of the plaintiff's claim to recover the contract price of these goods; for

if the goods were manufactured after the contract was broken it cannot recover for the cost of their manufacture. It could not thus enhance the damages accruing from the breach of contract.

The Sales Act (Public Acts of 1907, chapter 212), § 64, states the measure of the plaintiff's damages for the defendant's breach of contract, except as to the goods sold and delivered. It is "the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract." And, as the goods were to be manufactured and expense incurred by the plaintiff, the defendant was liable "for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation. . . . The profit which the seller would have made if the contract . . . had been fully performed" was to "be considered in estimating such damages." The court finds that there was "no evidence at all as to how many patterns the defendant would have sold during the life of the contract, or, except the contract, . . . as to how many it would have been bound to pay for," and held that because of this lack of proof the plaintiff was only entitled to the profit which it would have made under circumstances the most favorable to the defendant under the contract. It was of course impossible for the plaintiff to prove the precise number of patterns which the defendant would have sold during the five years and three months of the contract, had it given proper attention to the agency as it contracted to do. Under the court's holding it was assumed that not a single pattern would have been sold or damaged, and that the defendant would have been permitted to return at cost price, as discards, all of the patterns which it received from the plaintiff, except the last six months shipments, and these it was

assumed would have been returned at seventy-five per cent. of the cost price, leaving only $30 worth of goods on which the plaintiff was entitled to a profit of seventy per cent., or $21, which was the amount of the judgment. The circumstances thus assumed hardly represent what would have occurred "in the ordinary course of events" had the defendant performed in good faith its part of the contract. In the ordinary course of events some sales would have been made. The parties so expected, or the contract would not have been made. The court finds that there probably would have been sales, and that there would probably have been damaged patterns. Goods sold, and damaged patterns, could not have been returned, yet the judgment proceeds upon the ground that all goods received by the defendant would have been returned.

Under the Sales Act the damages are to be "estimated." It does not say that the plaintiff shall recover the profits which he would have made had the contract been fulfilled. These are to be "considered" in estimating the damage. The right of action accrues at the time the contract is broken. A plaintiff who has acquiesced in an anticipatory repudiation of a contract may recover damages for the breach before the time of performance arrives, or years before the time at which the contract is to terminate. In such cases the jury must estimate as best they can what the future situation is likely to be. Williston on Sales, § 587. They have the right to consider what would have happened in the ordinary course of things. The plaintiff excepts to the court's refusal to find as requested, that, in the ordinary course of business, the defendant would have shipped back enough patterns to have reduced the plaintiff's gross profits twenty per cent., and the court has certified the evidence upon which the plaintiff bases its claim for this correction. That evidence does not warrant

the correction requested; but it shows that there was evidence tending to prove the number of discarded patterns which would have been returned by the defendant, based upon several years' experience by the plaintiff in selling under such contracts to several thousand agents. The plaintiff made no claim to recover for profits on goods which would have been sold by it to replace those sold by the defendant, nor for profits on those which it admitted would probably have been returned as discards. There was evidence also from which the court found the cost of producing the patterns, and the profits, gross and net, to be derived by the plaintiff from every fifteen patterns to be delivered under the contract, excluding the discards and the returns at the end. This certainly furnished some basis for an estimate of the plaintiff's damages. It would also seem contradictory to the finding that there was no evidence at all as to the number of patterns which the defendant would receive and be bound to pay for under the contract. We think that the court erred in the application of the rule which it seems, correctly, to have adopted for the assessment of damages on this part of the case.

As there must be a new trial, it is unnecessary to consider the plaintiff's claims for changes in the finding further than has been done already.

There is error and a new trial is ordered.

In this opinion the other judges concurred, except HALL, C. J., who concurred in the result, but died before the opinion was written.