HERBERT C. LEWIS *vs.* GEORGE C. SCOVILLE.

First Judicial District, Hartford, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

Evidence of a written order of the defendant for a set of books, addressed to the "Army and Navy Magazine," accompanied with the defendant's check in partial payment therefor, and of letters subsequently written by the defendant and his attorney to that Magazine refusing to receive the books if delivered,—is amply sufficient

Lewis *v.* Scoville.

to show the existence of a business entity under the name of such Magazine, and its recognition by the defendant.

The identity of the plaintiff, an individual, with the business name assumed and used by him in a written contract with the defendant, is not, under our rules and practice, put in issue by a mere general denial of the allegations of the complaint counting upon such contract; and therefore a want of proof of such identity cannot properly be made the basis of a judgment of nonsuit. Nor is proof of such identity required under a "special defense" which in express terms recognizes "the plaintiff " as bound by the terms of the contract made with him under the assumed name.

Unless other rulings are involved, the only question raised by an appeal from the refusal of the trial court to set aside a nonsuit, is whether the plaintiff has failed, for any reason, to make out a prima facie case.

A ruling may be correct although the reason assigned therefor be erroneous.

In the present case evidence was offered tending to show that a box of books had been offered to the defendant at his place of business by the driver of the express company, but that delivery was refused by the bookkeeper of the defendant pursuant to his instructions, and the box was taken back to the express office. *Held* that in the absence of contradictory testimony, the trial court properly refused to nonsuit the plaintiff upon the ground that he had not shown a delivery to the carrier for the defendant.

Delivery to a carrier for transmission to the buyer, pursuant to the terms of a contract, is a delivery to the buyer.

There can be no anticipatory breach of a contract by one party without the acquiescence of the other; and therefore notice by the buyer of a set of books, given before the contract date of delivery, that he will not receive them if shipped, does not constitute a breach of the contract if the seller declines to accept the buyer's attempted repudiation.

Where the property in goods sold has passed to the buyer, as in the present case, the seller may maintain an action against him for the price.

A judgment as of nonsuit for failure to make out a prima facie case, entitles the defendant to costs, but it does not determine any issue between the parties and therefore the judgment-file should not recite such an adjudication.

Argued October 7th—decided December 22d, 1919.

ACTION to recover the price of a set of books alleged to have been ordered by, and delivered to, the defendant, brought before a justice of the peace and thence,

by appeal of the plaintiff, to the Court of Common Pleas in Litchfield County, and tried to the court, *Woodruff, J.;* the court rendered a judgment of nonsuit, and from its refusal to set such judgment aside, the plaintiff appealed. *Error and new trial ordered.*

The defendant, under date of September 2d, 1914, signed a written order, the material part of which reads as follows: "Army and Navy Magazine, Washington, D. C. Gentlemen:—Please deliver to any common carrier, addressed to me, one set of the 'Messages and Papers of the Presidents,' . . . bound in full black leather at $59.50 per set, . . . all in eleven volumes, for which I agree to pay $59.50 to the Army and Navy Magazine, or its assigns. I also agree to pay cost of transportation. . . . This order is unconditional and not subject to cancellation, or to any agreement not written on the contract. . . . I hereby acknowledge receipt of a duplicate of this contract and say that all representations relative to this purchase have been made in accordance with the above understanding.

G. C. Scoville

Business Address, Norfolk, Conn.

Received payment $5.

J. J. Swift,

For the Army and Navy Magazine,

Washington and New York."

On the same day the defendant executed and delivered to the representative of the Army and Navy Magazine, a written confirmation of this order as follows: "I hereby confirm my purchase this day of one set of Messages and Papers of the Presidents, eleven volumes, bound in full black leather, and for value received I promise to pay to the Army and Navy Magazine, of Washington, D. C. (Branch office, New York), or order, $59.50 as follows: $5 herewith, balance in the following payments; $5 on the 3 day of each month,

beginning on the 3 day of Oct. 1914, payable at the Branch Office of the Army and Navy Magazine, 141–145 West 36th Street, New York, N. Y. In event that any payment as stipulated. shall not be made within twenty days thereafter, the entire balance then remaining unpaid shall at once become due and payable.

G. C. Scoville,<br>Address, Norfolk, Conn."

Under date of September 3d, 1914, the defendant wrote the following letter: "Army & Navy Magazine, New York, N. Y. Gentlemen: Upon consideration I find that I have no use for the books ordered Sept. 2 from your Mr. J. J. Swift. Kindly cancel this order at once. I am returning receipt given me and request you to return my check for $5.00.

Respectfully, G. C. Scoville."

This letter was endorsed as received on September 4th, 1914. On October 16th, 1914, the defendant's attorney wrote the Army and Navy Magazine, stating that the defendant "absolutely refuses to accept the books," giving his reasons, which are not now material. This letter was indorsed as received October 19th, 1914.

The complaint, in addition to the substance of these letters, alleged prompt shipment, offer of the books to the defendant by the carrier, refusal by defendant to receive the books, and stoppage of payment of the check given with the order in payment of the $5 acknowledged to have been received at the foot of the order. The plaintiff claims payment for the entire purchase price as due him under the terms of the contract.

In the writ the plaintiff is described as "Herbert Cecil Lewis, of the City of Washington, in the District of Columbia, doing business under the name 'Army and Navy Magazine.'" The name of Lewis does not

appear anywhere in the complaint nor in the written contracts, and upon the trial no evidence was offered with respect to the identity of Lewis and the Army and Navy Magazine.

After the plaintiff rested his case the court granted defendant's motion for a judgment as of nonsuit, and denied a motion to set this judgment aside; and this appeal is based solely upon the court's action in granting the motion for judgment as of nonsuit and in denying the motion to set aside the judgment so granted. Other necessary facts are stated in the opinion.

*Wilbur G. Manchester*, for the appellant (plaintiff).

*J. Clinton Roraback*, for the appellee (defendant).

GAGER, J. The court, in granting the motion for a nonsuit, based its action upon the ground that there was "no proof, proper evidence of the existence of the plaintiff, or the Army and Navy Magazine, or the party who took the contract." The complaint set up a contract of the defendant with the Army and Navy Magazine acting by its agent, one Swift. The proof consisted of the contract with the Army and Navy Magazine, defendant's check indorsed by the Magazine, the letters of the defendant and of the defendant's attorney to the Magazine, and defendant's testimony as to the presentation of the contract to him by Swift, his signing and the delivery of his check to Swift drawn to the order of the Army and Navy Magazine when he signed the contract, and his directions to his bookkeeper not to receive a package from the Magazine when delivery was attempted. This is quite sufficient to show a business entity, recognized as such by the defendant, from which the defendant ordered the books in question. Whether this entity was a per-

son, partnership, or corporation, doing business under an actual or fictitious name, is of no consequence, and, in the absence of a special issue, the defendant cannot now be heard to deny the existence of the Army and Navy Magazine, having repeatedly recognized it over his own signature.

But the record shows that the real point urged and upon which the court acted, was the claimed failure of the plaintiff, Lewis, by his proof to show the relation between him and the Army and Navy Magazine. As we have seen, the plaintiff is designated in the writ as Herbert Cecil Lewis, doing business under the name Army and Navy Magazine. The claim of the defendant, sustained by the court, is that proof in the way of evidence must be offered showing that the plaintiff Lewis and the Army and Navy Magazine were one and the same person. As the record stands this claim cannot be supported. No such question is raised by the pleadings. And it is well settled under our practice and procedure, that where objection is intended to be taken to the capacity of a plaintiff to sue, this objection must be specially raised by proper pleading for that purpose. The answer here is a general denial. This only admits of proof contradicting the allegations of the complaint, and these, so far as the plaintiff is concerned, relate only to the Army and Navy Magazine. The question of plaintiff's right to sue because he is in fact the Army and Navy Magazine is not in issue under the general denial. Further, a special defense recognizes Swift as agent of the Army and Navy Magazine, recognizes the making of the contract by the defendant and alleges that the books, under the circumstances set forth in the special defense, could be returned "at the expense of the plaintiff," and that the defendant notified "the plaintiff" of his intention to rescind the contract. We have the case, then, where the general

denial does not raise the question of the right of Lewis to sue, and a "special defense" in express terms recognizes "the plaintiff," Lewis, as bound by the terms of the contract made by the defendant with the Army and Navy Magazine, and in which the defendant seeks to be relieved from the obligations of the contract by alleging a breach on the part of this plaintiff. Paraphrasing the language of the court in *Merwin* v. *Richardson*, 52 Conn. 223, 233, we think the defendant, by his answer and special defense and by going to trial on the merits, waived any question as to the capacity or right of the plaintiff to sue; there is nothing of merit in the claimed distinction between the plaintiff Lewis and the Army and Navy Magazine. In *Salomon* v. *Hopkins*, 61 Conn. 47, 49, 23 Atl. 716, the court recognized and adopted the rule stated in 1 Parsons on Notes & Bills, 81, where it is said: "It is a familiar principle, that a man, either in his general dealings or in a particular transaction, may adopt whatever name he chooses, and he will be bound accordingly." The same rule was recognized and adopted in *Pease* v. *Pease*, 35 Conn. 131, and such is the law generally. 29 Cyc. 270; 19 R. C. L. 1333; 132 Amer. St. Rep. 571, note V.; L. R. A. 1915D, 983 note. And it seems to be held, in connection with these citations, that a party is at liberty to sue either in his own proper name or in the assumed name, for in either case it is one and the same person bound, and there is no question as to assignment or the real party in interest. Under the statute the appearance of a plaintiff, not an inhabitant of this State, by attorney is sufficient. General Statutes, § 5621. The plaintiff in this case necessarily appeared by attorney, and no more was required upon the trial unless the exigencies of proof required his personal testimony upon some issue raised by the defendant by his pleadings. In this case the plaintiff by his writ told

the whole story: that he did business under the business name of the Army and Navy Magazine. The complaint properly counted on the business name only as the name disclosed to the defendant. No issue as to the identity of Lewis and the Magazine, or the capacity of the plaintiff to sue, having been raised, the court was in error in granting the motion on the ground stated.

The defendant claims that, even if the ruling upon the specific grounds stated by the court was erroneous, yet the conclusion to grant a nonsuit was right for other reasons, and that a correct ruling will not be set aside because based on an erroneous reason. Neither the motion for a nonsuit, nor the motion to set aside the judgment as of nonsuit, need specify the particular reasons. The single question, where no other rulings are involved, is whether for any reason the plaintiff has failed to make out a prima facie case. General Statutes, §§ 5793, 5794; *British American Ins. Co.* v. *Wilson*, 77 Conn. 559, 60 Atl. 293; *Thresher* v. *Stonington Savings Bank*, 68 Conn. 201, 36 Atl. 38. The question then arises does the record show that in any essential of his cause of action the plaintiff has failed to make out a prima facie case?

The Sales Act, General Statutes, § 4729, provides: "Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods." The present action is for the price of the goods. The defendant claims that this action will not lie because no proof of delivery has been made, and for the further reason that the proof showed a countermand of the order by the defendant on the day after the order was executed and, apparently, before the goods were shipped.

Delivery of goods to a carrier for transmission to the buyer, pursuant to the terms of a contract requiring delivery to a carrier, is a delivery to the buyer. General Statutes, § 4712. The defendant's order was: "Deliver to any common carrier, addressed to me . . . I . . . agree to pay cost of transportation." Under this provision of the contract delivery to the carrier was delivery to the defendant, the property in the goods then passed to the defendant, and it became his duty to accept and pay according to the terms of the contract. *Kinney* v. *Horwitz*, 93 Conn. 211, 105 Atl. 438; *Illustrated Postal Card & Novelty Co.* v. *Holt*, 85 Conn. 140, 81 Atl. 1061; 23 R. C. L. p. 1423, § 248. The evidence upon this point is, in substance, this: The defendant, having testified to his signature to the order and also to the letter of cancellation, further testified that he gave directions to his bookkeeper to refuse the books in case a package or box came from the Army and Navy Magazine, but that the box had not been tendered to him personally, though he would have refused it had it been so tendered. This latter was confirmed by the letter of the defendant's counsel to the plaintiff. The driver of the Adams Express Company during September and October, 1914, testified that he had delivered a number of parcels at defendant's place of business, and that the shipment in question was a box that he offered to deliver but delivery was refused, and that he took the box back to the express office. The express agent was not produced as a witness, because of his absence in the United States military service. In the absence of any contradictory testimony the court, in view of the contract, and the defendant's direction to his bookkeeper, was justified in not basing the nonsuit on the ground of nondelivery. The facts, unexplained, would justify the inference of a delivery by the plaintiff to the car-

rier for the defendant, as the contract required. This, under the Sales Act, was a delivery to the defendant.

The defendant further claims that because, on September 3d, 1914, and before the goods were tendered, he wrote to the plaintiff the letter of cancellation, no action to recover the price of goods sold and delivered can be maintained, but that the plaintiff is limited to an action to recover damages for breach of contract. Whether the goods were sent before or after receipt of this letter does not clearly appear. As the goods were manifestly not goods thereafter to be manufactured, this is not material. The attempted cancellation was not accepted or acquiesced in by the plaintiff, and the goods were, pursuant to contract, delivered to the carrier which, by the contract, was defendant's agent. The effect of such an attempted cancellation appears to have been undetermined in this State until the decision in *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 55 Atl. 599. After a careful examination of the English and American authorities the court there adopted the rule stated in the head-note of the case as follows: "A breach of an executory contract by anticipation occurs only when there is a distinct, unequivocal, and absolute refusal to perform the promise by one party, before the time for its performance has arrived, and an equally clear acquiescence in or acceptance of such renunciation by the other. In other words, the contract remains a subsisting one until the parties have mutually elected to treat it as broken, and have given unmistakable evidence of such election."

In *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 86 Atl. 19, the same question was presented as to one branch of that case that arises in the present case. There the defendant agreed to buy dress patterns to be manufactured by the plaintiff from time to time,

to place them on sale in its store, receiving credit at stated intervals for all discarded undamaged patterns which were returned. After the first instalment of patterns had been manufactured but before its shipment, the defendant repudiated the contract and refused to accept the goods. The plaintiff declined to treat the repudiation as a breach of the contract and at the appointed time delivered the goods to the carrier designated by the defendant. The court, citing *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 55 Atl. 599, and other cases, said, p. 501: "The repudiation of the contract without the acquiescence of the plaintiff did not put an end to the contract. The plaintiff could still treat it as subsisting and, notwithstanding the notice of repudiation, assume that the defendant would perform its part of the contract when the time for such performance should arrive. Had it chosen to consent to the renunciation, it might have done so and brought an action at once for breach of the contract, but there can be no anticipatory breach of a contract by one party without the acquiescence of the other. A breach by one party alone can only occur after the time for performance has arrived. . . . The repudiation of the contract was not, therefore, a breach of it, and the plaintiff, having declined to acquiesce, was bound to tender performance when the time for delivery of the goods arrived. This it did, and the goods were received in New York by the carrier designated by the defendant. The defendant, by the express terms of the contract, was to pay the freight on the goods from the place of shipment. When the goods were thus received by the carrier, and the bill of lading had been forwarded to the defendant, the plaintiff had fully performed its contract with respect to those goods. The delivery to the railroad was delivery to the defendant, and the title thereby passed to the defendant." And the court,

upon these facts, held that title to the goods had passed to the defendant, and that the plaintiff was entitled to recover the contract price of the same. The same question was again presented upon a retrial of the *Home Pattern Co.* case, and the rule announced in that case was confirmed and adopted. *Home Pattern Co.* v. *Mertz Co.*, 88 Conn. 22, 90 Atl. 33.

Our own decisions are so recent and so clear that further examination of the question is unnecessary. Applying our rule to the case in hand, we find that under the contract there was to be a delivery of the goods, apparently already manufactured and ready for shipment, to the defendant by a carrier designated, in general terms, by the defendant, defendant to pay transportation charges, a repudiation or attempted cancellation of the contract by the defendant, no acquiescence in this repudiation by the plaintiff, and actual shipment of the goods by the carrier designated in the contract, and it does not appear that the goods are not still in the hands of the carrier, by the contract defendant's agent to receive the goods. Repudiation of the contract was not a breach of it. Delivery to the carrier was delivery to the defendant and the title passed to the defendant upon such delivery. Refusal by the defendant to receive the goods did not revest title in the plaintiff, and he is, under the ruling in the above named cases, and so far as this case has yet been developed, entitled to recover the contract price. Upon no ground urged by the defendant does it appear that he was entitled to judgment as of nonsuit.

The record shows a judgment-file in which the issues are found for the defendant and judgment is rendered accordingly. This is erroneous. It was agreed, and the record otherwise showed clearly, that the actual judgment was as of nonsuit under the statute. A nonsuit for failure to make out a prima facie case determines no

issue between the parties. The defendant is not entitled to a judgment on the issues, but only for his costs. The judgment-file should show that the decision is based on the nonsuit. The forms are in common use, and doubtless the adoption of an erroneous form in this case was inadvertent. We call attention to the defect here, notwithstanding the agreement of the parties, because possibly serious consequence might follow from a judgment-file purporting to decide the issues when in fact no issues were decided.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.