NINTH STREET EAST, LTD. *v.* PHILLMORE T. HARRISON

CIRCUIT COURT  FIRST CIRCUIT
FILE No. CV 1-679-14028

Memorandum filed December 23, 1968

*Ernest L. Josem,* of Norwalk, for the plaintiff.

*John M. Brannelly,* of Bridgeport, for the defendant.

NORTON M. LEVINE, J. This is an action to recover the purchase price of merchandise sold to defendant by plaintiff. Plaintiff is a manufacturer of men's clothing, with a principal place of business in Los Angeles, California. Defendant is the owner and operator of a men's clothing store, located in Westport, Connecticut, known as "The Rage."

Pursuant to orders received by plaintiff in Los Angeles on November 28, 1966, defendant ordered a variety of clothing items from plaintiff. On November 30, 1966, plaintiff delivered the merchandise in Los Angeles to a common carrier known as Denver-Chicago Trucking Company, Inc., hereinafter called Denver, and received a bill of lading from the trucker. Simultaneously, plaintiff mailed defendant four invoices, all dated November 30, 1966, covering the clothing, in the total sum of $2216. All the invoices bore the notations that the shipment was made "F.O.B. Los Angeles" and "Via Denver-Chicago." Further, all four invoices contained the printed phrase, "Goods Shipped at Purchaser's Risk." Denver's bill of lading disclosed that the shipment was made "collect," to wit, that defendant was obligated to pay the freight charges from Los Angeles to Westport. Denver subsequently transferred the shipment to a connecting carrier known as Old Colony Transportation Company, of South Dartmouth, Massachusetts, hereinafter called Old Colony, for ultimate delivery at defendant's store in Westport. The delivery was attempted by Old Colony at defendant's store on or about December 12, 1966. A woman in charge of the store, identified as defendant's wife, requested the Old Colony truck driver to deliver the merchandise inside the door of defendant's store. The truck driver refused to do so. The dispute not having been resolved, Old Colony retained possession of the eight cartons comprising the shipment, and the truck thereupon departed from the store premises.

Defendant sent a letter, dated December 12, 1966, and received by plaintiff in Los Angeles on December 20, 1966, reporting the refusal of the truck driver to make the delivery inside defendant's store. This was the first notice to plaintiff of the nondelivery. The letter alleged that defendant needed

the merchandise immediately for the holidays but that defendant nevertheless insisted that the merchandise must be delivered inside his store, as a condition of his acceptance. Plaintiff tried to reach defendant by phone, but without success. Similarly, its numerous attempts to locate the shipment were fruitless. Plaintiff filed a claim against Denver for the lost merchandise, but up to the date of trial had not been reimbursed, in whole or in part, by the carrier. Defendant never recovered possession of the merchandise at any time following the original refusal.

The sole special defense pleaded was, "The Plaintiff refused to deliver the merchandise into the Defendant's place of business." Therefore defendant claimed that he is not liable for the subsequent loss or disappearance of the shipment, or the purchase price thereof, and that the risk of loss remained with plaintiff.

The basic problem is to determine the terms and conditions of the agreement of the parties as to transportation, and the risks and hazards incident thereto. The court finds that the parties had originally agreed that the merchandise would be shipped by common carrier F.O.B. Los Angeles, as the place of shipment, and that the defendant would pay the freight charges between the two points. The notations on the invoices, and the bill of lading, previously described, make this clear. The use of the phrase "F.O.B.," meaning free on board, made this portion of the agreement not only a price term covering defendant's obligation to pay freight charges between Los Angeles and Westport but also a controlling factor as to risk of loss of the merchandise upon delivery to Denver and subsequently to Old Colony as the carriers. General Statutes § 42a-2-319 (1) (a); Uniform Commercial Code § 2-319, comment 1; *Chase Manhattan Bank*

v. *Nissho Pacific Corporation,* 22 App. Div. 2d 215 (N.Y.). Title to the goods, and the right to possession, passed to defendant at Los Angeles, the F.O.B. point. *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 79. Upon delivery to the common carrier at the F.O.B. point, the goods thereafter were at defendant's sole risk. § 42a-2-509 (1); *Alderman Bros. Co.* v. *Westinghouse Air Brake Co.,* 92 Conn. 419, 425; *Harvey Probber, Inc.* v. *Kauffman,* 181 Pa. Super. Ct. 281, 287. See also *Electric Regulator Corporation* v. *Sterling Extruder Corporation,* 280 F. Sup. 550, 557 (D. Conn.), where the court, in commenting on § 42a-2-319, stated: "Thus, an F.O.B. term must be read to indicate the point at which delivery is to be made unless there is specific agreement otherwise and therefore it will normally determine risk of loss."

It is highly significant that all the invoices sent to defendant contained the explicit notation "Goods Shipped at Purchaser's Risk." This was, initially, a unilateral statement by plaintiff. The validity of this phrase, as expressing the understanding of both parties, was, however, never actually challenged by defendant, at the trial or in his brief. The contents of the invoices therefore confirm the statutory allocation of risk of loss on F.O.B. shipments.

The arrangements as to shipment were at the option of plaintiff as the seller. § 42a-2-311 (2). Plaintiff duly placed the goods in possession of a carrier, to wit, Denver, and made a reasonable contract for their transportation, having in mind the nature of the merchandise and the remaining circumstances. Notice of the shipment, including the F.O.B. provisions, was properly given to defendant, as required by law, pursuant to the four invoices. § 42a-2-504; Uniform Commercial Code § 2-504, comment 5.

The law erects a presumption in favor of construing the agreement as a "shipment" contract, as opposed to a "destination" contract. § 42a-2-503; Uniform Commercial Code § 2-503, comment 5. Under the presumption of a "shipment" contract, plaintiff's liability for loss or damage terminated upon delivery to the carrier at the F.O.B. point, to wit, Los Angeles. The court finds that no persuasive evidence was offered to overcome the force of the statutory presumption in the instant case. See *Electric Regulator Corporation* v. *Sterling Extruder Corporation,* supra, 558. Thus, as § 42a-2-509 (1) indicates, "[w]here the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier." Accordingly, at the F.O.B. point, when the risk of loss shifted, Denver and Old Colony, as carriers, became the agents or bailees of defendant. *Lewis* v. *Scoville,* 94 Conn. 79, 88; *Illustrated Postal Card & Novelty Co.* v. *Holt,* 85 Conn. 140, 146. The risk of subsequent loss or delay rested on defendant, and not plaintiff. A disagreement arose between defendant's wife and the truck driver, resulting in nondelivery of the merchandise, retention thereof by the carrier, and, finally, disappearance of the shipment. The ensuing dispute was fundamentally a matter for resolution between defendant and the carriers, as his agents. Nothing in the outcome of that dispute could defeat or impair plaintiff's recovery against defendant.

Defendant has urged that, since plaintiff pressed a damage claim against the carrier, this constitutes an assertion of an ownership interest by plaintiff, and responsibility for loss thereof, inconsistent with plaintiff's present claim against defendant. The court does not agree. Even though the risk of loss,

subsequent to delivery to the carrier, had passed to defendant, plaintiff nevertheless had the privilege of pressing the damage claim against the trucker. Any recovery on the claim would, however, be held by plaintiff, subject to its own interest, as a fiduciary for defendant. § 42a-2-722 (b); *Leist* v. *Schattie,* 197 Pa. Super. 456, 460. In this connection, the evidence demonstrated that plaintiff first made an effort to secure defendant's cooperation in asserting the damage claim but was unsuccessful.

The court entertains substantial doubt about the credibility of the defense. Defendant initially professed an urgent need for the merchandise, for holiday sales. When, however, the delivery was tendered, on December 12, 1966, only some two weeks prior to Christmas, defendant, acting by his wife, saw fit to refuse the merchandise for the alleged reason that the truck driver was obligated to carry the cartons inside defendant's door. The defense arising out of the refusal is without merit. Defendant knew, or should have known, that his rejection exposed the shipment to time consuming delays and disputes. Hence, delivery in time for holiday business was actually frustrated, not by plaintiff, but rather by the action of defendant and his agent, based on a disagreement over a relatively minor item. Wholly apart from the conclusion, previously stated, that such refusal was at the sole risk of defendant, the court finds that defendant's conduct was wrongful, arbitrary, and unreasonable, under all the circumstances.

In view of defendant's wrongful rejection, following the shifting of the risk of loss to him, he is liable to plaintiff for the entire purchase price of the merchandise. Thus, § 42a-2-709 provides in part: "(1) When the buyer fails to pay the price as it becomes due the seller may recover . . . the price (a) . . . of conforming goods lost or damaged within a com-

mercially reasonable time after risk of their loss has passed to the buyer." In *Lewis* v. *Scoville,* supra, 90, the court said: "Refusal by the defendant to receive the goods did not revest title in the plaintiff, and he is . . . entitled to recover the contract price." To the same effect, see *Katz* v. *Delohery Hat Co.,* 97 Conn. 665, 672; *Kinney* v. *Horwitz,* 93 Conn. 211, 219; *Home Pattern Co.* v. *W. W. Mertz Co.,* 88 Conn. 22, 25; *Illustrated Postal Card & Novelty Co.* v. *Holt,* 85 Conn. 140, 146.

The issues are found for plaintiff. Judgment may therefore enter for plaintiff to recover of defendant the sum of $2216, plus taxable costs.