## MEAGHER v. COWING.

SALES — ACTION FOR PRICE — PASSING OF TITLE — REMEDIES OF SELLER.

Defendant ordered of plaintiff ten cars of crushed stone, which plaintiff shipped consigned to himself, and ordered the carrier to deliver to defendant. The cars were placed at defendant's order and after several days defendant learned that the stone was not suitable for the purpose for which he ordered it, and canceled the order. Plaintiff reshipped the stone to his place of business and sued for the price. *Held,* that on delivery of the stone, which conformed to the contract of sale, to defendant, the title passed to him, and that plaintiff had a right to retain the property for defendant and sue for the contract price and the necessary expense of removing same from defendant's custody. MOORE and BLAIR, JJ., dissenting.

Error to Saginaw; Gage (Chauncey H.), J. Submitted February 21, 1907. (Docket No. 66.) Decided September 20, 1907.

Assumpsit by Ignatius Meagher, William J. Meagher, and Nicholas Meagher, copartners as Meagher Bros., against John P. Cowing for goods sold and delivered. There was judgment for plaintiffs for less than the amount claimed, and they bring error. Reversed.

*Albert McClatchey*, for appellants.

*Weadock & Weadock* (*Miles J. Purcell*, of counsel), for appellee.

MOORE, J.   This is an action of assumpsit.   The declaration was the common counts with a special count setting forth the terms of the contract involved in the cause, the violation thereof by defendant, and the nature of the damages sustained by plaintiffs.   A bill of particulars was demanded and filed as follows:

"Please take notice that the following is a bill of particulars of the plaintiffs' demand in this cause and for the recovery of which this action is brought, to wit:

"352 yards of crushed stone, delivered at Saginaw
------------------------------------------------ $475 20
Railroad company's charges for removing 10
car loads of stone from defendant's siding to
place of unloading------------------------   ..   199 98
Cost of unloading 10 car loads of stone--------   33 65
18 days' car service---------------------------   18 00"

The plea was the general issue with notice to the plaintiffs that the defendant would show that the stone was not of the quality ordered, and was not suitable for the work for which it was purchased, and that plaintiffs well knew the work defendant intended to use it in and that it was not suitable.

After the plaintiffs had closed their proofs, the defendant moved for a verdict in his favor.   The judge was of the opinion that the cost of unloading the stone was a proper charge against the defendant, and so instructed the jury.   He also instructed them the charge of $18 for detention of cars was a proper charge against defendant. While he was doing this, counsel for defendant called his attention to the fact that there was no evidence that Mr. Cowing was in any way responsible for the detention of the cars, or that they were in his possession; we quote from the record:

"There isn't a scintilla of evidence as to how many days

149 MICH.—27.

these cars were in Mr. Cowing's possession before they were notified to take those cars away. There isn't any evidence there—

"*The Court:* Well, the court can correct that after- wards.

"*Mr. Purcell:* Very well.

"*The Court:* Now your verdict should be in favor of the plaintiffs in this case for the sum of fifty-one dollars and sixty-five cents, under the undisputed evidence."

Counsel for plaintiffs asked the court to instruct the jury that plaintiffs might recover the amount of the freight bill from Alpena to Saginaw, $201.64, and from Saginaw to Bay City, $199.98, and also for 352 yards of stone at $1.35 a yard. The judge held plaintiffs could not recover any of the three items. Afterwards a motion was made to re-mit from the verdict the $18 for the reason that there was no evidence to support it. Notice of this motion was given to counsel for plaintiffs. He did not appear upon the hearing of the motion and the amount of verdict was reduced $18. The case is brought here by writ of error.

It will be observed that as to the item of $201.64, it does not appear in the bill of particulars, and we may dismiss it from further consideration. We think, too, in view of the fact that when the judge suggested that if there was no evidence upon which to base a verdict for the $18 item, he could afterwards correct it, and counsel made no suggestion of disapproval, and the further fact that when the motion was made he did not object, that his objection as to that item will not be heard now.

Counsel now say that, as there was no market for the stone at Saginaw, and they were compelled to take the stone to Bay City, they should have been allowed to recover the contract price of the stone, less its value in Bay City. If there was no other objection to this claim it would be a complete answer to it to say that there is no such claim in the bill of particulars.

The important question in the case is whether the title to the stone passed to the defendant so that plaintiffs are entitled to recover the full contract price therefor. Coun-

sel contend with great earnestness this question should be answered in the affirmative, and cite many authorities which they claim sustain their position. Before the question can be answered intelligently it becomes necessary to learn what the facts are. The defendant was a contractor doing bridge and other work in the city of Saginaw. The plaintiffs live in Bay City dealing in coal, wood, masons' supplies and are agents for Alpena crushed stone. They received an inquiry by telephone about crushed stone from defendant; they told him they could supply him at $1.35 a yard f. o. b. at Saginaw, but would require a written order. He sent them one reading as follows:

"John P. Cowing, Contractor and Engineer,
    "423–427 Citizens' Building, Cleveland, Ohio.
"Order No. 2341. Put this number on your invoice.
                        "Saginaw, 10–18–'05.
"To Meagher Bros.,
    "Bay City, Michigan.
"Please deliver via P. M. R. R. the following articles:

| Description | Charge To |
|---|---|
| 10 cars crushed stone | Contract No. 18. |

             "Confirming order by Manary,
                 "John P. Cowing,
                    "Per R. A. Corrigan.
"Mail invoice immediately on shipment of goods. For each order render separate invoice, our number must appear on each invoice."

Upon receipt of the order it was sent to Alpena and the ten car loads of stone were sent forward billed to Meagher Bros., the last car was shipped on the 24th day of October, some of them reaching Saginaw as early as October 23d, upon which date the defendant telephoned the plaintiffs that the stone was at Saginaw, but the freight agent refused to deliver it to him because it was billed to Meagher Bros. The plaintiff said: "Why I can fix that all right; I will give the freight agent an order transferring those cars over to you." The defendant said, "All right." The plaintiff telephoned the freight agent to deliver the

cars to the defendant and the freight agent said he would do so at once. The plaintiff also sent the following written order:

"BAY CITY, MICH., October 23, 1905.

"C. HARSCH,
"P. M. Freight Agent,
"Saginaw.

"*Dear Sir:* Kindly place all cars billed to us at Saginaw (crushed stone loads) on Wall and Webber's switch on orders of John P. Cowing, contractor.

"Yours very respectfully,<br>"MEAGHER BROTHERS."

And afterwards the defendant caused the railroad company to place a number of the cars on his siding. The plaintiffs heard no more of the matter until they received the following letter:

"SAGINAW, MICH., 10–25, 1905.

"MEAGHER BROS.,
"Bay City, Mich.

"*Gentlemen:* We have received on our switch at South Saginaw four cars of your stone. However, the stone is such a poor quality that we cannot use it in our construction, so therefore under the condition we will have to cancel our order of Oct. 18, '05, order number 2341. Please take this matter up as it will be to your interest to do so.

"Yours truly,<br>"JOHN P. COWING."

After receiving this letter plaintiffs' bookkeeper telephoned to William J. Meagher, telling him that the ten car loads of stone were at Saginaw and were refused by the defendant, and requested him to look after the matter as Ignatius Meagher, who had charge of the transaction up to this point, was away. William J. Meagher went to Saginaw to learn what the trouble was. On his arrival at Saginaw he talked with the city engineer before seeing the defendant, and was told by him that the specifications barred out Alpena stone. He then went to the defendant's superintendent, Mr. Manary, and was told by him that it was not crushed stone, but was refuse from the

quarry and that they would not accept it. The parties had a quarrel. Three or four days later Mr. Meagher had the stone shipped to Bay City and unloaded. No effort was made to sell it in Saginaw and no statement was made to defendant's superintendent that the stone had been delivered and title had passed, nor was he consulted about what should be done with the stone. Upon the trial no proof was made as to the market value of the stone at Saginaw at this time.

Counsel says the stone was shipped to Bay City because the city was the principal user of crushed stone in Saginaw, and the city engineer, who was required to approve of all material used, told William J. Meagher that the specifications called for Bayport stone, and that he would not allow Alpena stone to be used in any city work, that the testimony shows that at the time defendant refused this stone there was no market anywhere for it, owing to the lateness of the season, and that it could not be sold at all unless some one would take it on speculation at 50 or 60 cents a yard for the purpose of holding it over until the next season, and that plaintiffs did not have any place in Saginaw or down town in Bay City where they could have unloaded and stored it, and for that reason unloaded it where they did.

Upon this statement of facts can it be said plaintiffs were entitled to recover the full contract price? It must not be forgotten that when the stone was ordered defendant had never seen it. It was not until it reached him that he refused to take it for the reason stated in his letter. Plaintiffs now claim and claimed upon the trial that the stone was of good quality. If when they received the letter they had informed defendant that they had filled his order and refused to have anything to do with the stone and should look to him for the contract price, a very different question would be presented from the one now before us. They did not do this, but took the stone back into their possession; made no effort to sell it, and at the time of the trial still had it in their

possession. The plaintiffs themselves did not treat the transaction as a completed contract and the court cannot do so.

Judgment should be affirmed.

BLAIR, J., concurred with MOORE, J.

CARPENTER, J. The facts in this case are sufficiently stated in the opinion of Justice MOORE. The determining question is whether plaintiffs are at liberty to treat the transaction as a sale of the ten cars of crushed stone. When this crushed stone, which conformed to the contract of sale, was turned over to defendant, the title passed. Indeed, I am not sure that it did not pass when it was delivered to the railway company for carriage. See *Kuppenheimer* v. *Wertheimer*, 107 Mich. 77; *Althouse* v. *McMillan*, 132 Mich. 145. The circumstance that the defendant had an implied right to reject the same because it did not conform to the contract does not affect the principle. If it did conform to the contract—and the testimony shows that it did in this case—the title passed. This is settled by the above authorities.

It is contended, however, that plaintiffs cannot treat the transaction as a completed contract, because they took the stone back into their possession and made no effort to sell it. To this contention I cannot agree. Mr. Mechem, in his work on Sales (section 1618), quotes with approval from *Dustan* v. *McAndrew*, 44 N. Y. 72, as follows:

"The vendor of personal property in a suit against the vendee for not taking and paying for the property, has the choice ordinarily of either one of three methods to indemnify himself: (1) He may store or retain the property for the vendee and sue him for the entire purchase price; (2) he may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3) he may keep the property as his own and recover the difference between the market price at the time and place of delivery, and the contract price."

The plaintiffs in this case chose the first of said reme-

dies.   They had a right to choose it and therefore it was error for the trial court to instruct a verdict against them.

If, when the case is tried, plaintiffs continue to hold this property for defendant, they will be entitled to recover the contract price and the necessary expense of removing the same from defendant's custody.

It follows that, in my opinion, the judgment should be reversed, and a new trial ordered.

McALVAY, C. J., and GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred with CARPENTER, J.