THAYER EXPORT LUMBER CO. *v.* S. E. NAYLOR.

[57 South. 227.]

1. PAROL EVIDENCE TO EXPLAIN WRITING. *Resale. Instructions.*

When in a suit, a writing between the parties was offered in evidence the meaning of which was uncertain and doubtful and the plaintiff was permitted to testify as to the meaning of the doubtful words, it was reversible error not to have permitted defendant to give his version of what was intended.

2. SAME.

Prior introduction of inadmissible evidence estops the party offering it from objecting to the admission of similar evidence offered on the part of his opponent.

3. ACTION. *Resale. Instructions.*

Where a buyer of lumber refused to accept, and the seller resold it, and sued for the difference in price, and there was a conflict in the evidence as to whether or not the price of lumber had declined during the period between the time of the breach and the resale, it was error for the court to give an instruction which ignored the fact that it was the duty of plaintiff to show that he had sold the lumber within a reasonable time at the best price obtainable.

Appeal from the circuit court of Harrison county.
Hon. T. H. Barrett, Judge.

Suit by S. E. Naylor against the Thayer Export Lumber Company. From a judgment in favor of plaintiff, defendant appeals.

On October 17, 1906, the appellant entered into a contract with the appellee to buy five hundred thousand feet of lumber of the classification known to the trade as "Rio deals;" the specifications and prices being shown in the contract. The contract provided for delivery not later than December 15, 1906. On November 27th the appellee delivered to the appellant one hundred and forty-eight thousand and sixty feet on the contract, for which he was paid three thousand dollars on account; the number of feet not being definitely ascertained at the time of delivery. This was all the lumber of the kind specified that appellant had on hand for delivery at that time. No more lumber was delivered prior to December 15, 1906; but the appellee contends that an extension was granted until "late in January or early in February, 1907," which was contradicted by the appellant. In January a cargo of wrecked lumber was sold at auction and purchased by the appellee, who afterwards, on April 23, 1907, tendered lumber from the wrecked cargo to appellant in fulfillment of the contract, which appellant declined, after examining same. Appellant was anxious to buy lumber classed as Rio deals, but declined lumber from this wrecked cargo, because of its water-soaked and stained condition. On May 22, 1907, appellant sent appellee a statement of its account, accompanying same with a check for three hundred and ninety-seven dollars and twenty-three cents, marked on its face, "Bal. a|c to date." The appellee thereafter claimed that appellant had breached the contract in refusing to accept lumber from the wrecked vessel, and brought suit for the difference between the price at the time the lumber was tendered to appellant and the time the lumber

was sold by appellee, in September, 1907. From a judgment for appellee, the appellant prosecutes this appeal.

There are two errors relied upon for reversal: First, that the court erred in permitting the appellee to testify as to what the words ''Bal. a|c to date'' on the face of the check meant, and in refusing to permit appellant's witness to testify as to his understanding of the meaning of these words on the check. The next objection urged by the appellant is the granting of instruction No. 2 for the appellee, plaintiff below, which is as follows: ''The court instructs the jury, for the plaintiff, S. E. Naylor, that if they believe from the evidence that the contract entered into between plaintiff and defendant was extended from the time of the delivery of the lumber mentioned in said contract, and if they further believe from the evidence that the plaintiff was ready, willing, and able all during said extended period of time to fulfill and carry out said contract and deliver the lumber called for therein in accordance with the terms of said contract, and if the jury further believe from the evidence that plaintiff sold lumber which defendant refused to receive, had to sell the lumber under said contract, for defendant's account, at a lower price than the price which defendant agreed to pay plaintiff for it, on account of defendant's refusal to receive and pay for said lumber, then the jury will find for the plaintiff in a sum equal to the difference between the contract price, which defendant agreed to pay for said lumber, and the price that plaintiff sold said lumber for, as they may believe from the evidence.''

*May & Sanders,* for appellant.

Surely if the appellee had the right to testify what was meant or intended by the settlement and thereby defeat the plea of payment or accord and satisfaction, it was error for the court to deny to the appellant the same privilege. This right was denied to the appellant and for this we insist that the cause should be reversed.

If it should be contended, with reference to such testimony, that the testimony of the appellee was inadmissible, the appellant should nevertheless have been permitted to explain away the testimony of the appellee. The true rule in such cases in this: "Prior introduction of inadmissible evidence estops the party offering it from subsequently objecting to the admission of similar evidence on the part of his opponent." 1 Wigmore on Evidence, sec. 15, page 43.

The transaction was either open to explanation by parol evidence or it was conclusive. If it was open to explanation, it was error on the part of the court to permit the appellee to explain and to deny to the appellant the same right. If it was not open to explanation, then the acceptance of the check was a complete settlement of the controversy and a bar to the appellee's right of action and the appellant was entitled to peremptory instruction.

Upon either horn of the dilemma the trial court is impaled because the appellant was denied its legal rights.

Moreover the instruction No. 2 given for the appellee does not contain a correct announcement of the law. We direct the court's attention especially to that part of the instruction which reads as follows: "If the jury further believes from the evidence that plaintiff sold lumber which defendant refused to receive, had to sell the lumber, under said contract for defendant's account at a lower price than the price which defendant agreed to pay plaintiff for it on account of defendant's refusal to receive and pay for said lumber, then the jury will find for the plaintiff," etc. This instruction leaves out of view entirely the duty of the plaintiff to show that he sold the lumber within a reasonable time after breach of the contract ,at the highest price obtainable in the market at Gulfport obtaining after the breach and before sale. There was dispute on the question of the state of the market during that period. The appellee

contending that the price obtaining in the months of
March to September inclusive was much lower than the
contract price. Appellant's contention and proof was
to the contrary and was supported by the testimony of
other lumber merchants. The appellee's testimony was
unsupported.

If the appellee could have sold the lumber at any time
between early February and the time at which it was
sold, at a price equal to or greater than that stipulated
in the contract, it was his duty to do so and had he done
so no claim of damage could have been upheld against
the appellant. The instruction did not fairly submit
that very material question to the jury but left them to
find for the plaintiff if satisfied that eventually he had
to sell the lumber at a less price than that stipulated in
the contract, although at some period between the breach
and the sale he could have gotten a price equal to or
greater than the contract price. This, of course, is not
the law and the verdict, founded upon such misconcep-
tion of the law, should be set aside.

*Dodds & Leathers,* for appellee.

Addressing ourselves strictly to the assignment of er-
ror made by appellant, we will take them up in the order
in which they are announced and discussed in appel-
lant's brief, the first of which is as follows, to-wit:

(1) "The action of the court in refusing to permit
the appellant to present its version of what was in-
tended and meant by the letter and check of May 22,
1907, after having permitted the appellee to present his
version of the same." In the first place we will ask the
court to bear in mind that this was a suit for unliquidated
damages for the breach of the contract set out in appel-
lee's declaration. It was not a suit on an open account
nor on an account stated between the parties, but a suit
for damages. Appellee alleged in his declaration that
one hundred and forty-eight thousand and sixty feet of

the lumber called for in said contract was received by appellant, and that appellant payed for all of the lumber so received, except the sum of fifty-two dollars and eight cents, as shown on exhibit "B," to the declaration of appellee. In reply to this item of appellee's declaration, appellant pleaded payment, or an accord and satisfaction. It will be borne in mind that this payment or accord and satisfaction was made of the balance which appellee claimed was due him for the part of the lumber actually received up to the time of said payment, and not for any damages that appellee had sustained or would sustain by reason of appellant's refusal to receive the balance of the lumber called for in said contract. On the trial of said cause appellee conceded that the check for three hundred and ninety-seven dollars and twenty-three cents sent him on May 22, 1907 (record page 22) was in full satisfaction of the balance appellant owed appellee on the lumber actually received by appellant, and the court instructed the jury that appellee could not recover anything further on account of the lumber actually delivered to-wit, the fifty-two dollars and eight cents above mentioned. In other words the action of appellee in receiving appellant's check dated May 22, 1907, for three hundred and eighty-seven dollars and twenty-three cents, operated as a settlement in full of the amount due appellee at that time for the lumber actually delivered, and nothing more. Indeed the letter accompanying such check and the notation on the check itself, to-wit, "Bal. a|c to date" shows that said check was intended to pay the balance due on the lumber actually received by appellant under the contract in question. For letter accompanying the check containing settlement of the account of the lumber actually received. The court did not refuse to allow appellant to explain what was meant by the check so far as it related to the transaction which it was given to cover, which was the balance due on the account by appellant for the lumber

it had actually received, but it was not sought by appellant to make any explanation of the balance of the account due by him, but appellant's contention was that he should be permitted to go further and in violation and contradiction of the notation on the check and in contradiction of its own letter accompanying the check, be permitted to show that said check was given and received by appellee in settlement of all damages that appellee had sustained or should sustain by reason of appellant's failure to receive the balance of the lumber called for in the contract. We submit without further argument that the action of the trial court was eminently correct in refusing to allow appellant to show that said check was in accord and satisfaction for damages for a breach of the contract by appellant, especially when the testimony of this case shows conclusively that appellee did not know, nor had appellant stated at the time said check was accepted, that appellant would not accept the balance of the lumber called for by said contract—in other words no damage had arisen to appellee, so far as he could tell at the time. The authority cited in appellant's brief, on page 8 thereof, holding that receipts are subject to explanation and that payment depends on intent and understanding of agreement, we cheerfully concede to be the law, but we respectfully submit that they are wholly unapplicable to this case and the phase of it now under discussion, for the reason that appellant was not denied the right to make any explanation it desired about the balance due by it for the lumber actually received. However, it did not attempt nor desire to make any explanation about said balance of account, but as above stated attempted to go further and contradict its own statement by showing that the check was really intended as a settlement on an accord and satisfaction for all damages that appellee might sustain on account of appellant's intention to breach the contract thereafter. We submit that appellant's position on this point is wholly untenable, and we leave it.

WHITFIELD, C.

The action of the court in refusing to permit the appellant to present its version of what was intended by the letter and check of May 22, 1907, after having permitted the appellee to present his version of same, is reversible error. If no parol testimony was admissible, it was error to have heard the plaintiff's testimony on this subject. But if, looking at the letter and the statement of account and the check with the words "Bal. a|c to date," it could be fairly said that the expression was left in doubt as to its true meaning, then, surely, if the plaintiff was permitted to testify as to what it meant, so should the defendant have been. In section 15, vol. 1, of Wigmore on Evidence, it is said: "Prior introduction of inadmissible evidence estops the party offering it from objecting to the admission of similar evidence on the part of his opponent." Either the court should have shut out all evidence, or permitted both parties to testify as to what the phrase "Bal. a|c to date" meant. This letter and check were dated May 22, 1907, and this suit was not instituted for nearly two years thereafter, April 15, 1909.

We think, also, that instruction No. 2 given for the plaintiff is fatally erroneous. There was a dispute in the testimony as to what the state of the market for Rio deals was between the date of the breach of the contract, if it was breached, March, and September, 1907. The plaintiff testified that the price obtaining during that time was much lower than the contract price. The defendant's evidence, by a number of other lumber merchants, was to the direct contrary. The preponderance of the testimony was with the defendant on this point, and yet the charge omits to state the vital point—that it was the duty of the plaintiff to show that he sold the lumber within a reasonable time after the breach of the contract at the best price obtainable in the market at Gulfport, after the breach of the contract and before the sale.

The instruction as written left the jury to find for the plaintiff if they were satisfied that the plaintiff eventually had to sell the lumber at a less price than that stipulated in the contract, although he could have sold at a price equal to or greater than the contract price at some period between the breach and the sale.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is reversed, and the cause remanded.

Suggestion of error filed and overruled.