JACOB W. KATZ *vs.* THE DELOHERY HAT COMPANY.

Third Judicial District, Bridgeport, April Term, 1922.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The plaintiff sold and delivered to the defendant five cases of fur of a given quality, which was shipped September 27th, 1918. On October 31st the defendant wrote that the fur was unsatisfactory, and five days later sent it back to the plaintiff who insisted that it conformed to the contract and at once reshipped it by rail to the defendant. The latter refused to take it from the freight-house of the carrier, and upon learning from the carrier that it was still there, the plaintiff, on December 5th, notified the defendant in writing to the effect that he, the plaintiff, was about to take the fur into his possession as agent for the defendant, and, as such, to sell it upon a favorable opportunity and apply the proceeds upon the purchase price, unless otherwise directed by the defendant. No response was made to this notice, and on December 20th the plaintiff took possession of the fur and after some delay due to market conditions the fur was sold and the proceeds credited to the defendant. In an action to recover the rest of the purchase price, the parties were at issue as to whether

Katz *v*. Delohery Hat Co.

the fur delivered conformed in character and quality to the contract, and, if it did, whether the plaintiff, in reselling it as the agent or bailee of the defendant, had exercised due diligence to obtain the best available price. The jury returned a general verdict for the plaintiff for the full balance of the purchase price, and the defendant appealed. *Held:*—

1. That the jury having found by their verdict that the fur as delivered complied with the contract, the defendant had thereupon, necessarily and as matter of law, accepted it and acquired title to it; and that its return to the plaintiff upon the pretense that it failed to conform to the contract, did not divest the defendant's title.

2. That the reshipment of the fur to the defendant and its refusal to take it from the freight-house did not alter the situation: the fur still remained the property of the defendant.

3. That the defendant must be deemed to have acquiesced in the plaintiff's notice of December 5th, inasmuch as no response was made to it, nor did the defendant see fit to take possession of its fur.

4. That the only remaining duty of the plaintiff, after having taken possession of the fur pursuant to his notice of December 5th, was to sell it for and on account of the defendant at the best price obtainable by the exercise of due diligence; and that the verdict for the plaintiff—which was the only conclusion reasonably open to the jury upon the evidence—had established the performance of that duty.

The defendant contended that this duty of the plaintiff to sell, arose in November when the fur was sent back to him, and that had he exercised due diligence then, the fur could have been sold for a much larger sum. *Held* that this contention was not well founded; that the plaintiff's duty to sell did not arise until a reasonable time had elapsed after his notice of December 5th, when he elected to pursue that one of the four remedies open to him which involved such a sale; and, in this connection, that the charge of the court fixing November as the time when this duty of the plaintiff arose, was too favorable to the defendant.

A mere over-emphasis, in a charge, of a minor evidential fact, is ordinarily at the most nothing more than a harmless error.

The plaintiff testified that he manufactured but one kind or grade of fur, which bore a well-known name in the trade; that of the five cases of fur sold to the defendant, three were afterward bought by one manufacturer, and two by another, while two other cases, identical in kind, had been sold to a third manufacturer, and that from no one of them had any complaint come either as to the character or quality of the fur. *Held* that this evidence was relevant to establish the probability that the fur in suit was of the quality known in the trade by the name given to it by the plaintiff.

Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination

of the issue. No precise and universal test of relevancy is furnished: the question must be decided in each case according to the teachings of reason and judicial experience.

It is for the trial court to determine whether a witness is qualified to testify as an expert, and its decision is conclusive unless it clearly appears that the ruling was based on incompetent or insufficient evidence.

While rulings upon evidence must be set forth in a finding and cannot be aided by the printed record of testimony brought before this court on appeal from the denial of a motion to set aside the verdict, yet the information acquired by a perusal of such testimony may be used to supplement a manifestly incomplete finding in support of a ruling upon evidence.

Argued April 18th—decided August 4th, 1922.

ACTION to recover the purchase price of fur sold to the defendant, less the amount received upon its resale by the plaintiff as the defendant's agent, brought to the Superior Court in Fairfield County and tried to the jury before *Hinman, J.;* verdict and judgment for the plaintiff for $5,355, and appeal by the defendant. *No error.*

*William H. Comley, Jr.,* with whom was *William H. Cable,* for the appellant (defendant).

*Jacob B. Klein* and *Samuel A. Davis,* with whom was *Maurice E. Resnick,* for the appellee (plaintiff).

CURTIS, J. It will simplify the consideration of this case to deal first with the question whether the defendant's motion to set aside the verdict as against the evidence was properly denied.

A review of the evidence discloses that there are certain undisputed facts in evidence, among them the following: The plaintiff was engaged in the business of manufacturing and selling fur for use in manufacturing hats. The defendant was a manufacturer of hats. The plaintiff made and sold one kind of fur which was

designated by him as Y. C. Superior B. C. B. unpulled fur. This fur was cut from skins of rabbits imported from Australia.

On the 22d day of July, 1918, the plaintiff sold to the defendant 1,500 pounds of Y. C. Superior B. C. B. unpulled fur, at the price of $6.50 per pound. A memorandum of the contract and sale was made and signed by the parties, which reads as follows:—

Newark, N. J. July 22/18.

To The Delohery Hat Co.

Danbury, Conn.

Dear Sir: We hereby confirm your purchase of Five (5) cases of Y. C. Superior B. C. B. Unpulled @ $6.50 per lb. (Deliveries against this contract are liable to variation or cancellation on the part of the seller in case of strikes, breakdown, fires or delay or hindrance by reason of conditions occasioned by war or other circumstances beyond seller's control.) on the following terms and conditions.

Bills to be payable 8% the 10th of the following month, less 1% for each month thereafter.

Delivery Oct. 22 or sooner if called. Unless otherwise instructed will ship by

Very respectfully yours, J. W. Katz.

Accepted by THE DELOHERY HAT CO., M. Delohery, Pres.

This fur was shipped by rail to the defendant at Danbury, with its consent, about September 27th, 1918. The defendant received the fur, tried it late in October, 1918, and thought it was not the kind and quality contracted for, and on October 31st wrote to the plaintiff to that effect, and on November 1st the plaintiff replied that the fur was of the kind and quality contracted for; thereupon the defendant, on November 5th, reshipped the fur to the plaintiff at Newark, N. J. On or about November 13th, the plaintiff found the fur at his place of business. He immediately reshipped

the fur to the defendant and notified it by letter that he refused to accept the fur and had reshipped it to the defendant, and that if not paid at once he would begin suit for the contract price. On December 5th the plaintiff was notified by the railway company that the defendant refused to receive the fur.

The plaintiff thereupon served a notice upon the defendant by letter of December 5th, a copy of which is printed in the foot-note.*

The plaintiff ordered the railway company to return the fur to him at Newark, N. J. This was done and the fur was received by him on December 20th.

The plaintiff thereupon, after this notice to the defendant, undertook to sell the fur on the defendant's account, and sold it in the month of May, 1919, at $3 per pound.

This action was brought after the contract time for

---

* "I have, today, received notice from the agent of the New York, New Haven and Hartford Railroad Company, at Danbury, that you have refused the re-delivery of fifteen hundred pounds of Y. C. Superior B. C. B. Unpulled fur, which I sold to you last July, delivered to you in September, which, after accepting and keeping in your possession for several weeks, you returned to me at Newark, and which I immediately returned to you. I do not deem it either prudent or wise to allow fur to the value of $10,000 to remain in a railroad freight house, subject to the risks of theft and fire, and unclaimed by any one, and I am, therefore, today, ordering the return of the fur to me at Newark.

"I hereby notify you, however, that inasmuch as I sold and delivered the fur to you in good faith, and inasmuch as you accepted it and retained it for a long time in your custody, I shall insist upon the contract being carried out, and upon your paying to me the contract price for the fur. I intend immediately, to bring suit against you for the full amount of the contract, namely, for the recovery of $9,750,00 with interest. As you know, on account of the Armistice having been signed, there is now almost no market for fur. I shall hold the fur in my possession as your agent until such time as I can find a market at all favorable for the sale of it, when I shall sell it for the best price obtainable, and apply the proceeds upon the amount that you owe me. If I cannot find any market for it at all, I shall insist upon the recovery of the full price, and the re-delivery of the fur to you."

payment had passed. The action set up in the complaint is an action for damages for nonpayment of the price, to wit, for the purchase price less the amount received on the sale of the fur by the plaintiff in behalf of the defendant.

The evidence shows that after November 11th the price of fur began to fall, and that late in December there was practically no market for the fur.

Upon the trial, among the contested issues, were (1) whether the fur shipped to the defendant was of the character and quality called for by the contract; and (2) whether the price, for which the plaintiff sold the fur, and which he credited on the purchase price, was such a price as he was justified in selling it for in the exercise of reasonable diligence, in view of the falling market conditions arising from the armistice on November 11th.

The defendant does not question that under the evidence the jury could have reasonably found, ás it did, that the fur was of the character and quality called for by the contract. It claims that under the evidence there was an available market for the fur during November, 1918, and early in December, at a price substantially higher than the price received, and that by the exercise of due diligence the plaintiff could have secured a substantially higher price for the fur, and that the jury could not reasonably have found otherwise. This claim is based upon the assumption that the duty of the plaintiff, of using due diligence to procure the best available price for the fur, began either on November 5th, 1918, when the defendant shipped the fur back to the plaintiff, or on November 13th, when the plaintiff found the fur at his place of business. The fur was sold for $4,395 by the plaintiff, and the jury rendered a verdict for $5,355, that being the purchase price, $9,750 less the $4,395 received by the plaintiff for the

fur. The general verdict of the jury to this effect shows that they found that the fur delivered to the defendant by the plaintiff was fur of the quantity, character and quality called for by the contract, and that the price for which the plaintiff sold the fur was a price that he was justified in selling it for, in the exercise of reasonable diligence.

The defendant's claim that the duty rested on the plaintiff of procuring the best available price for the fur early in November, 1918, leads us to consider the relations of the parties to this fur in November, 1918, under the undisputed facts and the law of sales.

When in September, 1918, fur of the quantity, character and quality called for by the contract, as the jury found this fur to be, was shipped to the defendant by rail and delivered to the defendant in Danbury, the plaintiff had executed the contract and title passed to the defendant. The payment of the purchase price by the defendant in accord with the agreement was then the only executory part of the contract. The defendant could not at will, by returning the fur, divest the plaintiff of his right of action for the purchase price and cast upon him only a cause of action for nonacceptance of the fur. When fur of the quantity, character and quality called for by the contract was delivered to the defendant, it was accepted in law; the fact that the defendant had the right to inspect the fur and refuse to accept it if not of the character and quality called for by the contract, did not entitle it to refuse to accept fur of the character and quality called for by the contract, title to which had passed to it by delivery, and thereby deprive the seller of his right of action for the purchase price and remit him to an action for damages for nonacceptance. The title of the defendant to the fur, which had accrued to it upon its delivery, was not divested by the return of the goods to the plaintiff

on November 5th, but still continued in the defendant. When the plaintiff reshipped the goods to the defendant by rail about November 13th, 1918, the title was still in the defendant. The title remained in the defendant while the goods remained in the railroad freight-house in Danbury. 2 Mechem on Sales, § 1618; *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 86 Atl. 19, 88 Conn. 22, 90 Atl. 33; *Murphy* v. *Sagola Lumber Co.*, 125 Wis. 363, 103 N. W. 1113; General Statutes, §§ 4712, 4685; Williston on Sales, §§ 482, 278, 562.

The plaintiff in his notice of December 5th, 1918, informed the defendant, in substance, that he was about to take this fur of the defendant into his possession and hold it as the agent of the defendant and as such sell it for the defendant, and apply the proceeds upon his account against the defendant for the purchase price of the fur, unless the defendant notified him to the contrary. After receipt of this notice the defendant had a reasonable time (which under the circumstances would be a very short time) to take possession of its fur, or notify the plaintiff not to sell it. To the statement of the plaintiff's purpose in the notice of December 5th, the defendant made no response, and under the pleadings and evidence it must be deemed to have acquiesced in it. This action of the plaintiff and acquiescence of the defendant is intelligible in view of the fact that the parties were then in controversy as to whether the fur delivered to the defendant was of the character and quality called for by the contract.

The plaintiff received the defendant's fur on December 20th. He entered upon his self-imposed task of selling it for the defendant, within a reasonable time after notice and with due diligence, at the best available price. The defendant claims that when, in December, 1918, the plaintiff decided to hold the fur as agent or bailee of the defendant and sell it at the best available

price, the plaintiff's rights and duties as such agent or bailee in law relate back to the time when the fur was first reshipped to him by the defendant early in November, 1918.

We do not agree to this claim as to the plaintiff's duty. This fur, under the undisputed facts and the jury's verdict, never ceased to be the fur of the defendant until it was sold by the plaintiff acting as its agent with its acquiescence. The plaintiff did not begin to act as such agent until early in December, 1918. Under the undisputed facts and the finding of the jury, that the fur delivered to the defendant was of the character and quality called for by the contract, this case is one of an executed contract of sale where the title has passed to the buyer. Under such circumstances the goods are accepted, in law, by the buyer. In the proper use of terms under such conditions, the only cause of action that the seller has is an action for damages for the non-payment of the purchase price, the measure of damages being the purchase price. Section 63 of the Sales Act (General Statutes, § 4729). The situation was one of goods sold and delivered. *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 503, 86 Atl. 19. There could be no cause of action for nonacceptance of the goods, which in law have been accepted. Williston on Sales, § 482; *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 503, 86 Atl. 19. The complaint in this case sets up a cause of action for damages for nonpayment of the purchase price. The plaintiff, in December, 1918, learned that this fur of the defendant was still lying unclaimed in the Danbury freight-house subject to loss by fire, water or other injury. This fur, the plaintiff claimed, was the fur of the defendant because it was fur of the kind and quality contracted for, and had been delivered to the defendant according to the contract; but it had not been paid for, because the defendant claimed that

the title to it never passed to it but remained in the plaintiff, because the fur delivered to the defendant by him was not of the kind and quality contracted for (this claim the jury found unfounded). In this anomalous situation the common law, in order to effect a practical solution of the situation, gives to the seller the option to follow one of four courses: (1) He may leave the fur where it is and sue for the entire purchase price. (2) He may store the fur for the defendant and sue him for the entire purchase price. The law, in view of the fact that the buyer must usually act while a controversy is pending as to the quality of the goods being in accord with the contract, permits the seller to take other courses. (3) He may, after reasonable notice to the buyer that he intends to take such course, sell the fur acting as agent of the defendant, and recover the purchase price less the price obtained on the resale. (4) He may, upon due notice, retain the property as his own and sue to recover the difference between the market price at the time and place of delivery and the contract price. Williston on Sales, § 555; *Meagher* v. *Cowing*, 149 Mich. 416, 112 N. W. 1074; *Dustan* v. *McAndrew*, 44 N. Y. 72.

The plaintiff, in accord with his notice of December 5th, followed the third course. Since the duty of the plaintiff, to use due diligence in selling the fur at the best price obtainable, did not arise until after a reasonable time for the defendant to act after its receipt of the plaintiff's notice of December 5th, the jury, under the evidence, could have reasonably found that the plaintiff had exercised such duty and that he obtained the best price available; and the jury, under the evidence, could not have reasonably found otherwise.

The defendant further claims that the court made errors harmful to it in its charge and in its rulings upon the admission of evidence. In dealing with these claims

of error, we shall refer to the undisputed and established facts as stated in the foregoing discussion. The parties were at issue as to whether the fur delivered to the defendant was of the character and quality contracted for. The court charged as follows: "The plaintiff further claims, and this may be considered in this connection, that since, under the law, it was not necessary for the defendant to return the fur if it intended to avoid or rescind the contract, but notice by word of mouth or in writing to the plaintiff would have been sufficient, —if you find that the defendant not only wrote a letter but returned the fur to the plaintiff at Newark, and if you find further that he prepaid the freight thereon, this conduct you may consider as to whether it is consistent or inconsistent with the claims which he now makes, or what, if any, other significance should be attached to the conduct of the defendant. This is a question purely for the jury to consider." The court charged, therefore, in substance, that the conduct of the defendant as outlined in the charge, inconsistent with the simple requirement of § 4716, might be taken into consideration by the jury to determine what significance, if any, such conduct had in relation to the claim of the defendant that the fur did not conform to the contract. The logical connection between the premises and the conclusion, sought to have the jury draw, is so tenuous, that this portion of the charge might well have been omitted as an over-emphasis of a minor fact, but we are satisfied that at the most this charge was a harmless error.

The third assignment of error is not well taken. The court charged the jury as follows: "That is, as applied to a case like the present, your inquiry will be as to whether, at or about the time the defendant returned these goods—the date I think was November 5th, 1918—the state of the fur market was such that this

fur could then be sold by the plaintiff to another buyer or buyers by the exercise of reasonable diligence, and if there was such a volume of transactions that there was an established . . . price. . . . If you determine this question in his favor, that there was no available market, that he was not able to sell at once on account of the lack of a market, and that he did sell it as soon as the market reasonably justified a sale and did as well as could be done under all the circumstances, then you will determine from the evidence how much he received for the fur, and deduct this amount from the price fixed in the contract, to wit, as I recollect it, the total price was $9,750. . . . If the jury find that the price of fur dropped after the signing of the armistice, November 11th, 1918, that Mr. Katz offered it for sale to a number of hat manufacturers in Danbury, Newark, N. J., and Reading, Pa., and that there was no market for the same until the sales to the Kingston Hat Company and the Von Gal Hat Company, then you would be justified in finding that the plaintiff used due diligence in endeavoring to effect a sale at the best available price." The defendant's claim, as to error in these portions of the charge, is based upon the erroneous claim that the plaintiff's duty to use due diligence to procure the best available price for the fur began on November 5th, 1918. In the discussion on the claimed error in denying the motion to set aside the verdict, we have held that, under the undisputed facts, the plaintiff's duty to use due diligence to procure the best available price for the fur began in December, 1918. With that fact in mind, it is apparent that such error, if any, as the court made in the excerpts from the charge where it stated that such duty began November 5th, 1918, was too favorable to the defendant and could not have been prejudicial to it. The law relating to the conduct of the seller in dealing with the nonacceptance

of goods by a buyer in an executory contract of sale where the title has not passed, is rarely pertinent in an action for the purchase price where the contract, as here, has been executed by the seller and the title has passed.

The fourth, fifth and sixth assignments of error are not well taken. The defendant claims that "the court erred and mistook the law in failing to charge the jury that if the Von Gal Hat Company, on December 4th, 1918, was ready and willing to purchase said fur at $6 per pound, and the plaintiff knew said fact and failed and neglected to offer said fur to said Von Gal Hat Company, the plaintiff's recovery should be limited to $750, to wit: the difference between the contract price and the price at which the Von Gal Hat Company was ready to buy said fur." This claimed error is based upon the same erroneous conception, that the duty of the plaintiff to use due diligence to procure the best price available for the fur, began early in November, 1918.

The eighth assignment of error is not tenable. The assignments of error numbered 9, 10, 11, 13, 14, 15, 18, 19, 20 and 21, may be discussed together, as they involve substantially the same questions of law. The plaintiff testified, in effect, that he was an importer of raw skins and a manufacturer of hatters' fur for hat making; that he had conducted this business for many years and manufactured only one kind of fur, to wit, Yellow Carrot B. C. B. unpulled fur; that he called the fur he made Y. C. Superior B. C. B. unpulled fur; that he had sold it to numerous hat makers, including the companies mentioned below, for many years and that the character and quality of his fur so designated was well known in the trade; that in July, 1918, he had one lot of this fur on hand, all of the character and quality he was accustomed to make, sufficient

to fill seven cases, each case holding about 250 pounds; that he then sold two cases from this lot at $6.50 per pound to the Cuff Hat Company of Danbury as Y. C. Superior B. C. B. unpulled fur, and the five remaining cases to the defendant (the sale in controversy); that subsequently, acting in behalf of the defendant as above stated, he sold three of the five cases that had been sold and delivered to the defendant, to the Von Gal Hat Company of Danbury and two of the five cases to the Kingston Hat Company; that these five cases were sold as his Y. C. Superior B. C. B. unpulled fur, and at the then market price. The plaintiff then testified that the fur was delivered to the three companies, accepted by them and paid for without complaint as to its character and quality. The plaintiff claimed that the facts as to each of these sales to the three companies were evidential facts, tending to prove that the lot of manufactured fur, from which the fur in controversy came, was Y. C. Superior B. C. B. unpulled fur; and claimed, also, that because the three hat companies received the fur and accepted and paid for it without complaint, as fur of the character and quality of the plaintiff's Y. C. Superior B. C. B. unpulled fur, which they were accustomed to buy, these facts tended to prove that the five cases of fur in question were of the character and quality of the plaintiff's fur known in the trade as Y. C. Superior B. C. B. unpulled fur. The setting as to the evidential assignments of error appearing in the finding has been supplemented, in the above statement, by an examination of the evidence before us on the appeal from the denial of the motion to set aside the verdict. *Friedler* v. *Hekeler*, 96 Conn. 29, 34, 112 Atl. 651. The defendant objected to the admission of all these transactions as irrelevant and incompetent. The court admitted the evidence and the defendant duly excepted.

In *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 Atl. 998, we stated the following principles as underlying the admission of evidence: "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience. Thayer's Cases on Evidence, 2, 3. 'If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury.' *Insurance Co.* v. *Weide,* 11 Wall. (U. S.) 438, 440. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical rather than theoretical considerations. . . . The word 'relevant' means that any two facts to which it is applied are so related to each other, that according to the common course of events one either taken by itself or in connection with other facts proves or renders probable the past, present, or future existence or nonexistence of the other." Stephen's Digest of the Law of Evidence, Chap. 1, p. 36. The trial court, as indicated by its ruling, was of the opinion that if the jury found that the seven cases of fur of the plaintiff were of one lot of fur of identical quality, then the acceptance of and payment for, without complaint, of portions of this fur by each of the three companies as Y. C. Superior B. C. B. unpulled fur of the kind bought by each, rendered it probable that the lot of fur constituting the seven cases was of that quality. We do not find that this conduct of each of the three companies does not conduce in a reasonable degree to establish the probability that the fur in question was of

the quality known in the trade as the plaintiff's Y. C. Superior B. C. B. unpulled fur. An evidence question similar to the one at bar arose in the case of *Mears* v. *New York, N. H. & H. R. Co.*, 75 Conn. 171, 52 Atl. 610. The plaintiffs were consignees of a boxed piano shipped by freight from Massachusetts to New Haven. When the box arrived at New Haven, the plaintiffs employed an express company to cart the box to their home. When received, the box was wet inside and out and the piano damaged. The plaintiffs sued the railway company for this damage. The defendant claimed that the box was not so damaged while in its custody. In order to prove the fact that the box was not wet when delivered to the express company, the railroad company offered evidence to prove that when the agent of the express company receipted for the box he looked at it and made no complaint. The railway company claimed that if the box was in fact then wet, the agent would have naturally said something about it. The silence of the agent under the circumstances was held by us to be admissible evidence tending to prove the condition of the box at the time. So here, under the circumstances claimed to have been proved, the failure of either of the three companies, who received fur from the same lot identical in quality or the very fur in question, to complain of its quality, is a fact reasonably tending to prove that the fur in question was of the quality contracted for, namely, Y. C. Superior B. C. B. unpulled fur.

There was clearly a sufficient foundation for the admission of the opinion of M. T. Cuff as to the quality of fur coming from the same lot identical in quality, subject, of course, to the finding of the latter facts by the jury. So, also, there was sufficient foundation for the admission of the opinion of E. J. Von Gal as to the quality of the fur in question derived from an inspection

of the hats made from this fur. Assignments of error nine to eleven, thirteen to fifteen, and eighteen to twenty-one, are not well taken.

The sixteenth assignment of error is that the court erred in admitting the testimony of A. M. Rosenberg as an expert as to the general condition of the fur market after the armistice of 1918. The witness had been in the hat manufacturing business for thirty years, was vice-president and manager of the Kingston Hat Company, and had bought fur. The decision of a trial court as to the qualifications of an expert witness is conclusive, unless there has been an abuse of discretion, that is, unless it clearly appears that the decision was based on incompetent or insufficient evidence. We find no abuse of discretion by the trial court in the ruling complained of.

There is no error.

In this opinion BEACH and BURPEE, Js., concurred; GAGER, J., concurred in the result, but died before the opinion was written.

WHEELER, C. J. (dissenting). My view of the duty of the plaintiff differs so materially from that held in the majority opinion, and the question is of such practical importance in the law of sales, that I feel obliged to file this dissent.

One of the grounds of appeal is the denial of defendant's motion to set aside the verdict of the jury. Viewing the evidence in the light of the verdict, the most favorable finding of facts which the jury could have found in behalf of the plaintiff was as follows: 1. Plaintiff and defendant entered into a contract by which plaintiff sold to defendant fur of a certain quality and amount at $6.50 per pound, and agreed to deliver it to a carrier consigned to defendant at Danbury. 2.

Plaintiff delivered fur of the quality and amount called for by the contract to such carrier, at Newark, N. J. 3. Defendant received the fur late in October, 1918. It inspected the fur and wrote plaintiff that the part tried was found very unsatisfactory, and asked if it should return the fur and have plaintiff make fur for it according to the contract. Plaintiff replied that the fur was the same quality he had made for years and recommended that he use some from another bale. Thereupon, "on or about the 5th day of November, 1918, the defendant returned said fur to the plaintiff and refused to accept or pay for it." 4. The fur was delivered by an express company to plaintiff on November 12th in his absence, and on his return plaintiff, on November 13th, reshipped the fur by a carrier, consigned to defendant at Danbury, and wrote defendant that he refused to accept the fur and would start suit if he did not hear from defendant by the following Monday. 5. Defendant refused to receive the fur, and it remained with the carrier until December 10th, at about which time the carrier notified plaintiff that defendant had refused to receive the fur, and upon plaintiff's order it was reshipped to him and received by him December 20th. 6. Between November 5th and December 20th, plaintiff made no effort to sell the fur. Subsequent to December 20th, he made such effort, but could find no purchaser until May 19th, when he sold five cases at $3 per pound. 7. On November 11th, the price of fur of this quality began to fall, so that on December 20th there was no market for this fur. Between November 11th and December 5th there was a market for it.

We omit from this statement the offer to plaintiff, on December 4th, of Von Gal to purchase fur of this quality and amount, and confine, for the present, consideration to the facts above stated which are not in

dispute. The first delivery of the fur to the carrier by the plaintiff conveyed the title to the fur and its constructive possession to defendant. *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 86 Atl. 19, and 88 Conn. 22, 90 Atl. 33. Defendant still had the right to inspect the fur within a reasonable time before paying for it. It exercised its right of inspection, and then it returned the fur to plaintiff for its failure to conform in quality to the contract. The verdict for the plaintiff involved a finding that the fur was according to the contract. Therefore, the defendant had no right to return the fur. Plaintiff's and defendant's claims of facts proven, agree that on November 5th defendant refused to receive or pay for the fur. Its return was full notice to plaintiff that this was defendant's stand upon this matter. What remedies were open to plaintiff upon notice on November 11th of defendant's refusal to receive the fur? Under the Sales Act (General Statutes, § 4729) an action for the price lay, and the action obtained whether the seller stored or retained the fur for the defendant or left it where it was, as he had the right to do. Under the common law two additional remedies were open to plaintiff: 1. He might, after reasonable notice to the buyer that he intended to take such course, sell the fur acting as agent of the defendant, and recover the purchase price less the price obtained on the resale. 2. He might, giving due notice, retain the property as his own and sue to recover the difference between the market price at the time and place of delivery on or about November 11th, and the contract price. Plaintiff chose to pursue the first of these common-law remedies. The defendant, on November 5th, wrongfully refused to retain the fur and returned it to plaintiff; this imposed no obligation on the plaintiff to receive or retain it. But he was obliged to determine the remedy he would pursue within a reasonable time

after November 11th, when notice came to him that defendant had rejected the fur. He could not return the fur a second time, and thereafter conclude to adopt the first of these two remedies and sell the fur and credit it upon the contract price, as the majority opinion holds. I have been unable to find any authority which holds or suggests such a right to a seller. The unreasonableness to the defendant of permitting it is apparent. It may in good faith have refused to retain the fur because it believed the fur was not of the contract quality. To force it, when it had in good faith rejected the goods, to accept the results of a sale made long after might, as it did in this case, prejudice it seriously. Plaintiff's return of the fur was an appropriation of it to his own uses, and thereafter he could recover only upon the second of these common-law remedies. Since he has not proven the market price at the time he appropriated it, he has not laid a basis in the evidence for a judgment. It must be remembered that it was not proven that the fur had no available market until on and after December 20th.

But if plaintiff had the right to pursue remedy one and sell the fur as the agent of defendant, he was bound to have effected this within a reasonable time after November 11th; that time must be determined in view of the situation as disclosed by the record. The court held, in *Thayer Export Lumber Co.* v. *Naylor,* 100 Miss. 841, 848, 57 So. 227: "The preponderance of the testimony was with the defendant on this point, and yet the charge omits to state the vital point— that it was the duty of the plaintiff to prove that he sold the lumber within a reasonable time after the breach of the contract at the best price obtainable in the market . . . after the breach of the contract and before the sale." See, also, *Jochams* v. *Ong,* 45 La. Ann.

1289, 14 So. 247; *Carver, Frierson & Co.* v. *Graves,*
47 Tex. Civ. App. 481, 106 S. W. 903. A circumstance
of first importance was the falling market for fur. If
there had been no market between November 11th
and December 20th, so far as substantial damages were
concerned, it would have been immaterial whether
plaintiff endeavored to sell in this period or not. But
this was not the situation. The plaintiff's witness Von
Gal, president of the Von Gal Hat Company, testi-
fied that he sought to purchase for his company of
plaintiff on December 4th, a quantity of fur of the kind
and quality called for by defendant, and was ready and
willing to pay $6 per pound for it, but plaintiff neg-
lected to offer the fur to Von Gal. There was no ques-
tion upon the trial as to this fact. The plaintiff justi-
fied his neglect to offer the fur to Von Gal upon three
grounds: 1. That at this time the fur was out of his
possession and in the hands of the railroad company.
2. That he still hoped that defendant would take the
fur. 3. That Von Gal would not have bought if he had
known the fur was the subject of controversy between
plaintiff and defendant. The last reason is mere hy-
pothesis: Katz did not know that Von Gal was of this
mind. He was under no obligation to make such dis-
closure; and there was no reason why he should have
made it, and hence no possibility of concealment by him
of the identity of the fur. Katz could not be relieved
of his duty to offer the fur to Von Gal for sale for any
such reason. It later appeared that he sold thereafter
three cases of this fur to Von Gal without disclosing
its identity. The trial court excuses Katz from offering
the fur to Von Gal, upon the assumption that he might
have rejected it. But if the evidence is examined it
will be found that Katz has never said that this was
the motive for not offering the fur to Von Gal on
December 4th. His own justification was that he

thought the defendant would probably take the fur. He had no right to return the fur after defendant had refused to retain it, as I have before stated. His shipment of the fur did not put the fur out of his possession. He had no right to act upon the hope or believe that defendant would change its mind, and charge the consequences of his delay to defendant. If plaintiff had the right, as the majority opinion holds, to adopt remedy one, which was the remedy the seller adopted in *Dunstan* v. *McAndrew*, 44 N. Y. 72, 79, he must be governed in the application of the remedy by the rule there announced: "In such case, the vendor is treated as the agent of the vendee to make the sale, and all that is required of him is, that he should act with reasonable care and diligence, and in good faith. He should make the sale without unnecessary delay, but he must be the judge as to the time and place of sale, provided he act in good faith and with reasonable care and diligence."

Did the plaintiff act with reasonable care and diligence in effecting this sale? Can it be held to be due diligence to wait from November 11th to December 20th before attempting to make a sale when there was a market for the fur 'on December 4th, and a steadily falling market from November 11th? The burden of proving his diligence in effecting a resale was on the plaintiff, and he has met it by proving that he could have sold the fur on December 4th, at such a price as to make the loss $750 instead of the $5,250 of the verdict. The trial court in its memorandum says there was evidence to show that there was no available market, but evidence of this fact related to the period on and after December 20th. The question is, not as the plaintiff assumes, whether Katz' due diligence is to be measured by what he did after December 20th, but whether he used due diligence prior to this time. The defendant's

rejection of the fur was unqualified, and plaintiff was bound to choose his remedy within a reasonable time thereafter. The plaintiff failed to avail himself of an opportunity to sell to Von Gal, and hence failed to exercise the reasonable care and diligence which the law imposed upon him in making the resale. It follows under remedy one, that the greatest amount the plaintiff was entitled to recover was $750 and accrued interest. Upon the Von Gal offer the defendant claims that the court erred in failing to charge that if the Von Gal Company on December 4th, 1918, was ready and willing to purchase the fur at $6 per pound, and plaintiff knew this fact and neglected to offer the fur to this company, the plaintiff's recovery should be limited to $750. No reference was made in the charge to this vital fact in the case. No specific request to charge upon this point was made by defendant. In most instances such a failure will bar the raising of the point on appeal. This case presents an exception to the general rule. The subject of damages could not be adequately or accurately presented to the jury without a consideration of this point. We can have no guaranty that the defendant has had a fair trial unless the jury had before it this point. The issue of the plaintiff's reasonable effort to make a resale, without reference to the Von Gal offer, did not fulfil the duty of the court in submitting to the jury the issues of the case. I am not insensible to the defendant's claim that counsel had a right to assume, without a specific request, that the court would fairly instruct the jury upon so vital an issue as the Von Gal offer. The reference of the court to the efforts of the plaintiff to resell after December 20th for the purpose of showing plaintiff's due diligence, emphasized its omission of all reference to the Von Gal offer of December 4th. Practically it excluded this offer from the consideration of the jury upon the

question whether or not the plaintiff used due diligence in making a resale. Other assignments of errors in the charge which I regarded as erroneous have already been sufficiently covered.