GEORGE V. KLIMES, et al. v. PERCY JONES, et al.

Western Section.    May 11, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

John R. Walker, Jr., of Memphis, for complainants.
W. M. Miles, of Union City, for defendant.

HEISKELL, J. This is a replevin suit in which the complainant claims under two chattel mortgages executed by Percy Jones, one dated February 16, 1926, and the other dated March 9, 1926.

The defendant, The Farmers Exchange Bank, filed an answer and cross-bill, claiming under a chattel mortgage from Percy Jones, dated February 10, 1926. Jones answers both original and cross-bill, admits the execution of the three mortgages and says, with a few exceptions, the mortgages to complainant and that to secure defendant convey the same property. Jones is making no contest as to the mortgages, the property or the amount of his indebtedness to the respective partices. The case therefore becomes a contest of priorities under the conflicting mortgages.

The mortgages of February 16th, and March 9th, were executed to George V. Klimes, trustee, to secure notes given by Jones to Bessire & Co., Incorporated, for unpaid purchase money due on the

property described. The mortgage of February 10th was executed to Harris Parks, trustee, to secure the Farmers Exchange Bank of Union City $1500 borrowed money of which $1200 was paid to Bessire & Company as the cash payment on said property.

Harris Parks is now dead and Jones practically eliminated so far as any contest is concerned. It will simplify the consideration of the issues involved to refer to the trustee Klimes and Bessire & Company as complainants and the Farmers Exchange Bank as the defendant.

It is not disputed that on February 4, 1926, Percy Jones signed an order to Bessire & Company for the following goods f. o. b. factory:

1—#30 Model "B" Middleby Marshall Oven, etc.
1—Champion Automatic Dough Brake.
1—2-Barrel Century Dough Mixer, etc.
1—3 Bbl. Century Flour Bin, Elevator & Sifter.
1—Flueless Boiler.
1—#30 Champion Bread Rack.
1—#206 Steel Union Dough Trough.

for which he agreed to pay $3256.50; on arrival $1200, eleven monthly notes of $175 each and one note of $131.50.

The order blank contained two conditions, the first of which was stricken out when this order was signed by Jones, constituting the contract of sale. These provisions are:

"(1) If on ten or thirty days' terms, it is agreed that, to secure you in the full payment of this order, the title, owner-ship, and possession does not pass from you, or your assigns to me (or us) and my (or our) assigns until the full amount due for this order has been fully paid and satisfied.

"(2) If extended payments are desired, the vendee hereby agrees to execute secured notes (together with regular contract covering payment), in accordance with the laws of the State; same to be approved by vendor at the time shipment is made, or a few days prior thereto, payments to be made as follows, all notes bearing legal rate of interest."

The mortgage of February 10th to defendant embraced all of said articles in the order of February 4th, and in addition one moulder, one work bench, one wrapping machine, one lot of pans and tools, steam boxes, show cases and fixtures.

Under a somewhat more elaborate description the mortgage to complainants of February 16th embraced the same articles in-cluded in the order of February 4th, and the mortgage of March 9th included the moulder and a cake mixer, defendant does not claim the cake mixer and complainants do not claim the articles described in defendant's mortgage over and above the order ex-

cept the moulder. With the exception then of the cake mixer and the work bench, wrapping machine, lot of pans, tools, steam-boxes, show cases and fixtures the mortgages of complainants and that of defendant cover the same articles.

Defendant's mortgage was recorded the day it was executed, February 10, 1926. Complainants' mortgages were recorded March 9, 1926.

Complainants claim priority on three grounds:

    (1) That the decription of the property in the mortgage to Harris Parks, trustee, is not sufficient to charge complainant with constructive notice, and that the mortgage is invalid for want of description.

    (2) That at the time the mortgage to Harris Parks, trustee, was executed, Jones did not own the property conveyed by the mortgage.

    (3) That on January 17, 1927, and before suit was brought, Farmers Exchange Bank agreed that the property might be sold and the proceeds of sale be first applied in payment of the indebtedness secured by the two mortgages to Klimes, trustee.

The defendant contends:

    (1) That the description is good.

    (2) That the title was in Jones on February 10th.

    (3) That if not, the mortgage to defendant was valid as a mortgage of after-acquired property.

    (4) That the agreement of defendant referred to in complainants' third contention was made under a mistake of facts, being misled by complainant Klimes, was repudiated at once upon discovery of the mistake and therefore of no effect in the case.

    (5) The prior registration of defendant's mortgage.

The Chancellor held the description in defendant's mortgage good as against the complainants. That defendant had priority as to all the contested articles except the oven and the moulder, basing these exceptions on the ground that by the contract the oven was to be installed by complainants and therefore something was to be done by the seller before the title passed and that the moulder, according to the proof, was not purchased until after the mortgage of February 10th. From this decree both sides appealed and assigned errors, each insisting on priority as to all the articles included in their respective mortgages.

We shall not attempt to follow the numerous assignments of error or the findings of fact by the Chancellor, but endeavor to state and dispose of the issues raised between the parties, taking them up in what we consider the order of importance.

First, the complainants insist that Jones did not have title to the property embraced in the mortgage to defendant on February 10th. That the contract of February 4th involved unascertained goods, and before the goods were ascertained or appropriated to the contract the defendant's mortgage was executed, and that at the time of the order of February 4th Jones agreed to give a mortgage on the goods to secure the purchase money to complainant's and that besides complainants had never relinquished their right of possession to the goods until their mortgage of February 16th was executed.

The defendant insists that the property in the goods passed at the time of the order on February 4th because this must be taken as the intention of the parties under the Act of 1919, chapter 118, section 19, rule 1. Besides defendant contends that if this is not so, still a mortgage of after-acquired property is valid, and cites Judge v. Jones, 99 Tenn., 21, to support this proposition. Complainants do not deny the authority of Judge v. Jones, but reply that while a mortgage of after-acquired property is valid, that the mortgage must show the intention to cover after-acquired property, and that even then the mortgagee takes subject to any lien or right of possession which attached to the property as against the mortgagor.

We think the order of February 4th involved unascertained goods. The articles were such as commonly enter into the equipment of a bakery. Until appropriated to the contract the articles were no more ascertained or specified than the property in an order for so many bushels of corn, so many barrels of flour, or so many Ingersoll watches. The title and right of property, therefore, did not attach to any specific property at the date of the order on February 4th, and did not attach until the articles were designated or appropriated to this contract by shipment, the contract being f. o. b. factory. None of the property in the defendant's mortgage had been consigned to Jones by or before the date of that mortgage.

"A general order given to a manufacturer of machinery by one purposing to purchase a machine of a particular kind at a price named by the maker, although accepted by the manufacturer, remains a mere executory contract of sale until a particular machine has been selected and unconditionally appropriated and set apart for delivery to the purchaser in fulfillment of the order. Jones v. Brewer, 79 Ala., 545.

"The allocation by defendant to plaintiff of a car of a description other than that bought by plaintiff would not have been the appropriation of a particular article, but of a number of undesignated ones, without the purchaser's assent. The later

element is essential to the passing of title. Byrne v. Hulet Motor Car Co., 198 N. Y. S., 232.

"Where the agreement for sale is of a thing not specified, in other words, of unascertained goods, or of a certain quantity of goods in general, without a specific identification of them, or an appropriation of them to the contract, the contract is an agreement to sell and the property does not pass."
Benjamin on Sales (6 Ed.), p. 375.

Where the goods had been manufactured but not segregated or marked for the buyer, nor delivered to a carrier for transportation to him, the title had not passed. Illinois Postal Car & Novelty Co. v. Holt, 85 Conn., 140, 81 Atl., 1061. See, also, Wade on Law of Sales, 40-41.

But defendant contends that this is not material, as Jones had a right to mortgage the property to secure defendant's debt, as after-acquired property. The rule is well settled that while property to be acquired may be bound by a mortgage, the mortgagee takes subject to any right or lien that has attached to the property as against the mortgagor. For instance, a tenant may mortgage a crop not yet made, but the mortgagee would take subject to the landlord's lien which accrued and followed the crop. Ruling Case Law, Vol. 5, 403-4.

It is material to inquire, therefore, as to the right of possession of the complainants to this property at the time Jones executed the mortgage of February 10th.

The order of February 4th, which is the contract of sale between complainants and Jones, contains this provision:

"If extended payments are desired the vendee hereby agrees to execute secured notes (together with regular contract covering payment) in accordance with the laws of the State; same to be approved by vendor at the time shipment is made, or a few days prior thereto."

Just before this provision, the one in regard to retaining a lien was erased. It is argued for defendant that this erasure shows an intention to pass the property free from a lien and the provisions remaining as to secured notes and contract covering payment do not necessarily refer to a mortgage on the particular goods, that other security might be given. This is true, but the provision is that whatever arrangement is made for the security of the notes, it shall be approved by the vendor at the time of shipment or a few days before.

The contract that was made by Jones for security of the notes was the mortgage of February 16th, at the time of the shipment of the goods or a little before. At least it appears from the proof that all goods shipped to Jones before that time were consigned to

the order of the seller. This reserved the possession in the complainants until the execution of the mortgage of February 16th.

The Act of 1919, chapter 118, section 20, provides:

"(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession of property in the goods until certain conditions have been fulfilled. The right of possession of property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer.

"(2) Where the goods are shipped, and by bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods.

"But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligation under the contract."

This language is so plain as not to need construction, but it has been construed. Glanzer v. J. K. Armsby Co., 165 N. Y. S., 1006; Boss v. Hutchinson, 169 N. Y. S., 513.

Notice the language: "Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract." We remark in passing that this bears out the contention that unascertained goods do not become in the same class as specific goods until appropriated to the contract. That is designated in some way as the goods going to the buyer under the contract. But even in a sale of specific goods, where by the bill of lading the goods are deliverable to the seller or his agent, the seller thereby reserves the property in the goods.

As before stated all the goods embraced in complainants' mortgage of February 16th were either shipped after that date or they were consigned to the seller.

If the goods had not been shipped or appropriated to this contract, they were not ascertained or specific, and if they were shipped to the seller the possession was retained. In neither case could the buyer convey the property so as to give priority over the complainants.

So far as concerns the necessity that the intention to make the mortgage apply to after-acquired property should appear, we think this is answered when the only property and all the property included in the mortgage is yet to be acquired, but when the mortgage of defendant was executed on February 10th, the complain-

ants had not parted with the right of possession and Jones had not acquired such right of property as enabled him to give defendant priority over complainants.

Counsel for defendant quotes from the case of Mayberry v. Lilly Mill Co., 112 Tenn., 568, to show that even where something remains to be done by the seller, the sale may be complete if this appears to be the intention of the parties, but when we take the provision of the contract in connection with the time and manner of shipment and the rule laid down in Uniform Sales Act, we think it is clear that the possession was retained by complainants for the purpose of obtaining a contract securing the purchase money notes and, therefore, the complainants' mortgage of February 16th takes precedence of defendant's mortgage of February 10th.

In Mayberry v. Lilly Mill Co., supra, at page 569, the court says:
"There is no difference in the rights and remedies of vendors of personal property in enforcing payment of purchase money, in executory contracts and in contracts executed, when possession of the property sold is unchanged. They (the vendors) in both cases have what is generally called a common-law lien, but which is in fact a higher and more efficient right than a mere lien, upon the property sold, so long as they retain possession, to secure and enforce payment of the purchase money, which cannot be destroyed save by compliance with the terms of the sale. Their rights in both cases grow out of their possession of the thing sold, and are not affected by the vestiture of that title."

This language of the court, in connection with that quoted from the Act of 1919, chapter 118, section 20, covers this case and shows that complainants did not relinquish possession, but retained it for the purpose of securing the mortgage of February 16th.

Complainants' mortgage of March 9th embraces only one item of disputed property—the moulder. The purchase of this was a separate transaction and different in character from the contract in regard to the other contested articles of the outfit. Klimes is the only witness who testifies as to the purchase of the moulder. So we will let him tell about it in his own words:
"18. Please state how Mr. Jones purchased the moulder and how same was contracted for and delivered. A. Potts Brothers, operating a bakery in Paducah, Kentucky, had a used moulder they desired to dispose of, by telephone we arranged for Mr. Jones to examine this moulder, and having given Potts Brothers a written authority to honor Mr. Jones' shipping instructions which would be given provided the moulder would be found satisfactory. Mr. Jones examined the moulder about February 12th, and Potts Brothers shipped to

him at Union City, receiving as their reimbursement credit memorandum from us dated February 13th, amount $575. They drew on us for this amount, the draft being paid by us on February 16, 1926.''

We think Klimes is mistaken as to the date of this transaction. He says Jones examined the moulder about February 12th. We think this was before the 10th, or Jones would not have included it in the mortgage to defendant of February 10th. It was natural enough for him to embrace in the mortgage of the 10th, the articles which were to be shipped from the factories, because they were all to be new and he had no reason to doubt that he would accept them; but this presumption does not apply to the second-hand moulder which he examined in Paducah to determine whether or not he would accept it. We think he would not have included it in the mortgage of the 10th unless he had examined it. The examination might have been on the 9th or 10th and this would justify the memory of Klimes in fixing the time as about the 12th. But it is immaterial whether Jones accepted the moulder before or after February 10th. Certainly it had been arranged by telephone, before the mortgage to defendant was executed, that Jones should examine the moulder in the possession of Potts Brothers in Paducah, and if he accepted it that it should be shipped to him direct to Union City, and it was so consigned. This was a sale of ascertained specific property. It did not need to be separated from other articles of like kind, or to be appropriated to the contract, and the right of property or possession was not reserved by complainants in any way. When Jones examined and accepted this moulder the property passed to him; and while we think this was before February 10th, if not, it was before March 9th. So without more, rule 1 of section 19 of the Uniform Sales Law applies.

''Where there is an unconditional contract to sell specific goods, in a deliverable State, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment or the time of delivery, or both, be postponed.'' Heir v. Wightman, 197 App. Div., 214, 188 N. Y. S., 274.

Besides, it appears from the record, that this moulder was actually delivered to Jones in Union City before March 9th and without any reservation whatever.

Complainants' assignments of error present the contention that the mortgage of February 10th is void for want of definite description and not sufficient to charge complainants with constructive notice.

In the view we have taken of the case this question becomes material only as to the moulder. However, this makes it necessary to

decide the question. Complainants insist that there is nothing in defendant's mortgage to show in what county or State the property is located. It was recorded in Obion county, Tennessee, and this is where the goods were when delivered to Jones and dealt with by him and complainants. Then defendant's mortgage provides that in case of default the property shall be advertised and sold in the 13th Civil District of Obion county, Tennessee, and the property is described as "Baking machinery equipment as follows:"

The proof shows that Percy Jones had no other bakery outfit in Obion county. Our Supreme Court has announced this rule:

"It is said any description which will enable third persons to identify the property, aided by inquiries, which the mortgage itself indicates, will be sufficient." Atwood v. Brown, 1 Shannon's Cases, 639.

Certainly the inquiries indicated by this mortgage would lead to the bakery equipment of Percy Jones in the 13th Civil District of Obion county, Tennessee, which would no doubt be as specific as Union City, as anyone would know that a bakery is not located in the country. As against complainants the description is sufficient under the authorities. Atwood v. Brown, 1 Shannon's Cases, 639; Barker v. Wheelip, 5 Hum., 329; Galt v. Dibbrell, 10 Yerg., 145; Ross v. Young, 5 Sneed, 629; Masson v. Anderson, 3 Bax., 307.

Complainants contend, under assignment two, that it was error in the Chancellor to hold that the agreement of C. W. Miles for the defendant, that Klimes could sell under the mortgages of complainants and apply proceeds first to indebtedness of Bessire & Co., was made under the mistaken belief that Bessire & Co. had notes retaining title. We think Miles was misled by the statement of Klimes that they had notes with title retained. It may be that Klimes did not intend to mislead, but Miles was mistaken nevertheless and defendant is not precluded by the agreement.

The result is that we disagree with the Chancellor in his holding that as to all the property embraced in complainants' mortgage of February 16th, except the oven, defendant's mortgage took priority. As to all this property we hold that complainants had priority because the property was not ascertained until shipment and that by the provisions of the contract, in connection with the time and method of shipment, complainants reserved possession until the mortgage of February 16th. We thus reach the same conclusion with the Chancellor as to the oven, but upon different grounds.

We disagree with the Chancellor as to the moulder, and hold that as to this the defendant takes priority instead of the complainants. We have stated our reasons for this conclusion fully in this

opinion. It follows that the decree, except as to the oven and the uncontested property, and as to the recovery of defendant on its cross-bill against Jones, is reversed. It appears from a stipulation in the record that the value of the moulder was $300. A decree for this amount will go in favor of the Farmers Exchange Bank against George V. Klimes, Bessire & Co., the surety on the replevin bond and sureties on the appeal bond, with interest from the replevin. As to the work bench, the wrapping machine, one lot of tools, steam boxes, show cases, iron safe and other fixtures, and as to the personal judgment against Percy Jones on defendant's cross-bill, the decree is affirmed. The defendant will pay two-thirds of the costs of this and the lower court, and the cause is remanded for the purpose of carrying out this decree.

Owen and Senter, JJ., concur.